**Affirmed and Opinion filed October 20, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00883-CV

## CAL DIVE OFFSHORE CONTRACTORS INC., Appellant

## V.

## NIGEL BRYANT, Appellee

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-57457**

## O P I N I O N

Appellant Cal Dive Offshore Contractors, Inc., appeals from a final judgment in favor of appellee, Nigel Bryant, following a jury trial on Bryant's suit for injuries sustained in a slip-and-fall accident on Cal Dive's ship. Cal Dive raises six issues on appeal. In its first, second, and fourth issues, Cal Dive argues that the trial court erred in its application of English law to the case. We overrule these issues because Bryant adequately informed the trial court of the applicable English law and the trial court did not abuse its discretion when it concluded that English law provided a general negligence standard and submitted the case to the jury using Texas general

negligence and damages questions. In its third issue on appeal, Cal Dive argues there is legally and factually insufficient evidence that it breached a duty it owed to Bryant. We overrule this issue, concluding the evidence is sufficient given the testimony that an oily substance previously had been reported in the area where Bryant fell.

Cal Dive asserts in its fifth issue that the trial court abused its discretion when it prevented Cal Dive from questioning Bryant's expert economist about whether Bryant was required to pay taxes on his earnings. Because the potential prejudicial effect of this questioning significantly outweighed its probative value, we conclude the trial court did not abuse its discretion and overrule Cal Dive's fifth issue. In its final issue, Cal Dive contends the trial court erred when it denied Cal Dive's motion for mistrial based on Bryant's cross-examination of Cal Dive's corporate representative regarding Cal Dive's willingness to settle the case. We overrule this issue because Cal Dive failed to object to the settlement testimony or ask for a jury instruction to disregard, and therefore Cal Dive failed to preserve this issue for appellate review. We affirm the trial court's final judgment.

## BACKGROUND

Bryant, a citizen of the United Kingdom residing in Thailand, worked as a saturation diver. Prior to the events underlying this litigation, Bryant had worked all over the world on subsurface oil and gas construction projects at depths up to 1,200 feet. In September 2010, Bryant was working for an entity related to Cal Dive on a project on the outer continental shelf of China. While Bryant was walking on the deck of the diving ship owned by Cal Dive, he slipped. Bryant tried to break his fall by grabbing a nearby handrail. Bryant suffered a severe separation of his left shoulder as a result of the fall. While standing back up after his fall, Bryant observed that there was an oily substance on the deck with water on top of it. Bryant went to see the diving vessel's medic, who believed Bryant had dislocated his shoulder and

2

needed to be evacuated to the Chinese mainland to be examined by a medical doctor.

While waiting to be taken to the Chinese mainland by helicopter, a deck foreman saw Bryant and asked him what had happened. When Bryant mentioned the location of his fall, Bryant testified the deck foreman replied that the oily substance in that area had been reported three times, and "that, now, maybe, something would be done about it." Bryant believed that the oily substance he had slipped on had come from the vessel's Remotely Operated Vehicle (ROV), which had been taken out of the water about two hours before his fall and stored just above the gangway on which Bryant fell.

Bryant eventually returned to Thailand to have his shoulder evaluated. The doctor recommended immediate reconstructive surgery, which occurred the same day as the examination.

Following his surgery, Bryant was given a rehabilitation protocol to get him ready to return to work. Bryant was eventually cleared to return to work and he informed Cal Dive that he was ready to work once again. Cal Dive initially told Bryant there was a job for him. But, after a delay caused by confusion over whether Bryant needed a new medical clearance for deep-sea diving, Bryant testified that Cal Dive told him the position had been filled and it no longer had a job for him. Bryant then found a diving job with another company working in Malaysia.

After two weeks of dive work in Malaysia, Bryant's left shoulder began hurting again. Bryant tried to contact Cal Dive to inform Cal Dive that he was still having problems from the injury he suffered on Cal Dive's ship and needed additional medical attention. Bryant testified that Cal Dive never returned his call.

Bryant underwent a second surgery to repair his shoulder. Although the surgery was necessary to restore as much function and reduce as much pain as

3

possible, Bryant's surgeon explained that Bryant would "never be 100 percent" and should not return to his job as a saturation diver, a job that paid him between $130,000 and $150,000 a year.

Bryant filed suit against Cal Dive in Houston, Texas, where Cal Dive maintained its principal place of business. Bryant asserted Cal Dive was negligent under the law of the United Kingdom. Pursuant to Texas Rule of Evidence 203, entitled "Determining Foreign Law," Bryant filed a Notice of Intent to Rely on Foreign Law. Bryant attached the declaration of Peter George Handley, an English solicitor with experience in English maritime negligence law, to his Rule 203 submission. Bryant had asked Handley to determine whether English law provided a cause of action for a person injured aboard a vessel and, if so, the elements of that cause of action, as well as to describe the damages available to such an injured person.

In his declaration, Handley stated that English law "provides a cause of action to a Claimant injured aboard a vessel as the result of the negligence and/or breach of [a] statutory duty of the Owner of the vessel and/or other persons in possession or control of the vessel." Handley further explained that "negligence occurs where the Defendant (be it the Owner and/or the Charterer and/or the Operator and/or the Manager of the vessel) is in breach of his duty of care owed to the Claimant." Handley then described the three duties that could be breached:

(1) The duty of care owed in the law of tort to take such care for the safety of the Claimant whilst onboard the vessel as is reasonable in all the circumstances;

(2) The duty of care owed as occupiers of the vessel (pursuant to the Occupiers Liability Act 1957) to see that the Claimant is safe whilst aboard the vessel; and/or

(3) The common law duty of care owed as employers to provide the Claimant (if an employee of the Defendant) with a safe place of

4

work, safe plant, machinery and equipment, and a safe system of work.

Handley also discussed the measure of damages available to a plaintiff injured as a result of another's negligence. Handley explained that, under English law, damages in a personal injury action are meant to "put the party who has been injured . . . in the same position as he would have been in if he had not sustained the wrong for which he is now getting his compensation or reparation." According to Handley, English law entitles a plaintiff to recover general, or non-pecuniary, damages, including physical and psychological pain and suffering, as well as physical impairment. English law also provides for the recovery of special or pecuniary damages, including "loss of earnings or loss of earning capacity," "loss of pension rights," "medication costs," "the costs of medical consultations and surgical or other treatments," "care and assistance," and "adaptation of accommodation."

Bryant filed his foreign-law submission eight months prior to trial. A short time before trial, Cal Dive filed special exceptions contending that Bryant's only English cause of action was under the Occupiers Liability Act 1957 and 1984.[1] Cal Dive provided copies of the Acts to the trial court and argued that they imposed the same status (licensee or invitee) and knowledge (actual or constructive) requirements as Texas premises liability law. Cal Dive also argued that Bryant's total damages were limited to $20,961 because English damage awards are "largely controlled by the *Guidelines for the Assessment of General Damages in Personal Injury Cases*." Cal Dive did not file an affidavit or declaration by an English lawyer, nor did Cal Dive attach to its special exceptions the complete text of the *Guidelines*, instead attaching only an unauthenticated excerpt that it represented to the trial court came from the *Guidelines*.

---

[1] *See* Occupiers Liability Act 1957, 5 and 6 Eliz. 2, c. 31 (Eng. & Wales); *see also* Occupiers Liability Act 1984, c. 3 (Eng. & Wales).

5

Bryant filed a motion to strike Cal Dive's foreign-law submission because it was untimely. In addition to asking the trial court to strike Cal Dive's submission, Bryant also argued that Cal Dive's statements regarding English law were inaccurate. Bryant specifically argued that the Occupiers Liability Act eliminated all distinctions between invitees and licensees, and that the duty of care detailed by Handley mirrored the duty imposed by the Act. According to Bryant, both the Act and Handley characterized the duty of care as one of reasonableness under the circumstances. Bryant further asserted that the English standard is virtually identical to the duty and standard of care imposed under ordinary Texas negligence law, which provides that one generally has a duty of care to act as an ordinary reasonable person under the same or similar circumstances.

The trial court, after reviewing the submissions of the parties and hearing extensive argument on the subject, denied Cal Dive's special exceptions and decided to submit the case to the jury under English law. The court did not rule on Bryant's motion to strike, and Bryant did not object to the trial court's failure to rule. At the charge conference, the trial court provided the parties with a proposed charge embodying the court's conclusion that both the liability and damages standards under English law were the same as those imposed by Texas general negligence law, not Texas premises liability law as Cal Dive had argued. The trial court overruled Cal Dive's objections to the jury charge, refused the premises liability questions Cal Dive had requested, and submitted the case to the jury on a general negligence theory.

The jury found that Cal Dive was negligent, failed to find that Bryant was negligent, and found that Bryant was entitled to a total of $450,000 in damages for loss of earning capacity, medical care, and past physical pain and mental anguish. The jury awarded no damages for physical impairment or future physical pain and mental anguish. The trial court signed a final judgment based on the jury's verdict.

Cal Dive filed motions for new trial and for judgment notwithstanding the verdict, which the trial court denied. This appeal followed.[2]

ANALYSIS

**I. The trial court did not err in its application of English law because Bryant met the requirements of Texas Rule of Evidence 203.**

In its first, second, and fourth issues, Cal Dive argues the trial court erred in its application of English law to the facts of this case because (1) Bryant did not adequately inform the trial court about English law; (2) the trial court failed to submit a question to the jury inquiring into Cal Dive's knowledge of the spilled oil, which it argues is required by English law; and (3) the trial court submitted Bryant's damages to the jury using the Texas Pattern Jury Charge for personal injury damages rather than the English *Guidelines for the Assessment of General Damages in Personal Injury Cases*, which Cal Dive argued significantly limited Bryant's damages. In response, Bryant argues, among other things, that Cal Dive waived its issues challenging the trial court's application of English law because it did not file its English legal materials at least thirty days before trial as required by Rule 203. We address these issues together.

**A. Standard of review and applicable law**

A trial court must submit in its charge to the jury all questions, instructions, and definitions that are raised by the pleadings and the evidence. *See* Tex. R. Civ. P. 278; *Hatfield v. Solomon*, 316 S.W.3d 50, 57 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex. 1999)). The goal is to submit to the jury the issues for decision logically, simply,

---

[2] We abated this appeal following oral argument because Cal Dive filed for bankruptcy. *See* Tex. R. App. P. 8.2. After the bankruptcy court lifted its stay to permit this Court to render a decision, we reinstated the appeal. *See* Tex. R. App. P. 8.3(a).

7

clearly, fairly, correctly, and completely. *Hatfield*, 316 S.W.3d at 57. To achieve this goal, trial courts enjoy broad discretion so long as the charge is legally correct. *Id.* We review whether a challenged portion of a jury charge is legally correct using a de novo standard of review. *Id.* (citing *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2003)).

Texas courts may apply foreign law. *Long Distance Int'l, Inc. v. Telefonos de Mexico, S.A.*, 49 S.W.3d 347, 351 (Tex. 2001). The court, not the jury, determines the laws of foreign countries. *Id.* (citing Tex. R. Evid. 203). A party intending to raise an issue about foreign law must give notice and, at least thirty days before trial, furnish copies of any written materials or sources the party intends to use as proof of foreign law. *Id.* Rule 203 is described as a hybrid rule because the presentation of foreign law to the court resembles the presentment of evidence, but the meaning of the foreign law and its application to the facts are decided and reviewed as questions of law. *Id.*; *see* Tex. R. Evid. 203 (stating court's determination of foreign law is "treated as a ruling on a question of law").

When determining foreign law, a trial court may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence, including affidavits, testimony, briefs, and treatises.[3] *PennWell Corp. v. Ken Assoc., Inc.*, 123 S.W.3d 756, 760 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing Tex. R. Evid. 203). The specific procedures established by Rule 203 must be followed for the determination of foreign law. *Id.* at 761. A party asking a trial court to take judicial notice of foreign law must furnish the court with sufficient information to enable it to comply with the request. *Id.*; *cf. Ahumada v. Dow Chemical Co.*, 992 S.W.2d 555, 558 (Tex. App.—Houston [14th Dist.] 1999, pet.

---

[3] If the court considers sources not submitted by a party, it must give the parties notice and a reasonable opportunity to comment and to submit further materials. Tex. R. Evid. 203.

denied) ("Summary judgment is not precluded when experts disagree on the interpretation of the law if, as in this case, the parties do not dispute that all of the pertinent foreign law has been properly submitted as evidence."). If the party seeking the application of foreign law fails to provide the necessary information to the trial court, there is a presumption that the law of the foreign jurisdiction is identical to that of Texas. *PennWell Corp.*, 123 S.W.3d at 760.

**B.    Cal Dive did not waive its challenge to the application of English law.**

In a cross-issue raised in his appellate brief, Bryant argues Cal Dive waived its challenge to the application of English law because, in Bryant's view, Cal Dive did not comply with the time requirement set forth in Rule 203. *See* Tex. R. Evid. 203 (stating that "a party who intends to raise an issue about a foreign country's law must . . . at least 30 days before trial, supply all parties a copy of any written materials or sources the party intends to use to prove foreign law."). Because Bryant was the party seeking to apply English law to his claims and had timely raised the issue with the trial court, we conclude Cal Dive did not waive its challenge to the application of English law by filing responsive argument and English legal materials less than thirty days before trial. *See Nexen, Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 418–19 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding that the appellant did not waive its argument that foreign law applied to case because appellee had initially raised argument that foreign law might apply and had produced and relied on foreign legal materials). Furthermore, the trial court does not appear to have set a deadline for Cal Dive's response, and that court considered Cal Dive's arguments regarding English law on the merits and rejected them in the court's jury charge. To the extent Bryant argues that Cal Dive's submission improperly included English legal materials on issues that were outside the scope of those addressed by Bryant's original submission, we conclude Bryant failed to preserve that argument for our review

9

because he did not obtain a ruling on his motion to strike or object to the trial court's failure to rule on it. We therefore consider Cal Dive's legal arguments based on English law.

### C. Bryant adequately informed the trial court of the applicable English law.

Cal Dive contends in its first issue that Bryant failed to prove English law adequately, and therefore the trial court should have presumed that it was the same as Texas premises liability law.[4] Approximately eight months before trial, Bryant filed his Notice of Intent to Rely on Foreign Law with the trial court and attached Handley's declaration. Bryant argued that, as explained in Handley's declaration, controlling English law provided that the duty Cal Dive owed to Bryant was to take such care for Bryant's safety as was reasonable under the circumstances. According to Bryant, this duty mirrors the duty of ordinary care Texas courts use to charge the jury in a general negligence case. Bryant's notice began an ongoing discussion between the parties and the trial court on the applicable English law.

In the course of the discussion of English law, Cal Dive submitted additional materials on the applicable English law, including the Occupiers Liability Act 1957 and 1984, an English case, *Lowther v. H. Hogarth & Sons, Ltd.*, [1959] Vol. I Lloyd's Rep. Q.B. 171, and an excerpt allegedly from the *Guidelines for the Assessment of General Damages in Personal Injury Cases*. Cal Dive argued that: Bryant failed to meet his burden under Rule 203 to inform the trial court adequately of the applicable foreign law; English law governing the case was, for all practical purposes, the same as Texas premises liability law (an issue we discuss in Part I.D. below); and English law limited Bryant's damages to $20,961 (an issue we discuss in Part I.E. below).

---

[4] Cal Dive does not argue on appeal that Texas law, rather than English law, should govern Bryant's claims. Rather, Cal Dive argues only that we should presume English law is the same as Texas law because Bryant did not adequately prove the content of English law.

Finally, Bryant provided the trial court with citations to two American cases that, he argued, established that England had eliminated all distinctions between invitees and licensees in the Occupiers' Liability Act 1957. *See Kermerac v. Compagnie Generale Transatlantique*, 358 U.S. 625, 632 n.10 (1959) ("These distinctions have after thorough study . . . been eliminated entirely from the English law by statutory enactment."); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 552 (Tex. 1985) (Kilgarlin, J. concurring) (recognizing England's elimination of invitee and licensee and instead imposing a "common duty of care" toward all visitors).

Having reviewed the record and the parties' arguments, we see no indication that pertinent parts of English law were missing from the materials submitted to the trial court. *Cf. Ahumada*, 992 S.W.2d at 558. Although the trial court expressed uncertainty regarding the English liability standard early in the ongoing discussion, the trial court received additional materials from the parties thereafter. Accordingly, we conclude the parties adequately informed the trial court of English law. *See Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 164 (Tex. App.—Waco 2010, no pet.) (concluding appellant complied with Rule 203 requirements after considering foreign legal materials filed before trial as well as a trial brief based in part on previously filed foreign legal materials); *Nexen, Inc.*, 224 S.W.3d at 418 (concluding trial court made proper choice of law after it was presented with the issue and was provided evidence of the applicable foreign law by both parties); *PennWell Corp.*, 123 S.W.3d at 761 (examining materials filed by both sides before concluding appellant met Rule 203 burden to inform trial court adequately about Japanese law); *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 525–26 (Tex. App.—Texarkana 1993, writ denied) (affirming trial court's reliance on affidavits of English solicitor to

11

establish English law). We therefore overrule Cal Dive's first issue.[5]

**D.    The trial court did not err when it refused to include a premises liability theory in the jury charge.**

In its second issue, Cal Dive argues that the trial court erred in its application of English law when it refused to include Cal Dive's requested jury question regarding its actual or constructive knowledge of the oily substance on the deck of the dive vessel. According to Cal Dive, the Occupiers Liability Act 1957 did not do away with the requirement under English law that a plaintiff prove the owner/occupier of the premises had actual or constructive knowledge of an unreasonable risk of harm. In Cal Dive's view, because English law retained this requirement, the trial court's failure to include a jury question on that subject was error. We disagree.

The Occupiers Liability Act 1957 abolished common-law distinctions between invitees and licensees in favor of a single designation: visitor. Occupiers Liability Act 1957 § 1(2) (stating that visitors generally "are the same . . . as the persons who would at common law be treated as . . . invitees or licensees"); *Kermerac*, 358 U.S. at 632 n.10. The 1957 Act also changed the duty owed to such visitors, providing that "[a]n occupier of premises owes the same duty, the 'common duty of care,' to all his visitors," with certain exceptions not relevant here. Occupiers Liability Act 1957 § 2(1). The 1957 Act defines the common duty of care owed to all visitors as follows:

> The common duty of care is a duty to take such care as in all the circumstances of the case is reasonable to see that the visitor will be reasonably safe in using the premises for the purposes for which he is invited or permitted by the occupier to be there.

---

[5] Because the trial court had adequate information to apply English law, we need not decide whether Cal Dive is correct that this case should have been submitted to the jury under Texas law using a premises liability theory.

*Id.* § 2(2).

The 1957 Act makes clear that its purpose was to supplant the common law and impose a new liability standard. *See id.* § 1(1) (providing that the Act "shall have effect, in place of the rules of the common law, to regulate the duty which an occupier of premises owes to his visitors in respect of dangers due to the state of the premises or to things done or omitted to be done on them"); *see also Nixon*, 690 S.W.2d at 552. Contrary to Cal Dive's argument, this new duty to licensees and invitees—quoted above—does not include the common-law requirement that the occupier have actual or constructive knowledge of an unreasonable risk of harm.[6] The Occupiers Liability Act 1984 confirms this conclusion, adopting a duty to non-visitors that does require such knowledge.[7]

We conclude that the common duty of care established by the Occupiers Liability Act 1957 is the same as the ordinary negligence duty of care recognized by Texas: an occupier has a duty of care under English law to act as an ordinary reasonable person under the same or similar circumstances, not the duty of care found

---

[6] The Act does not prohibit considering the occupier's knowledge in determining whether the occupier discharged its common duty of reasonable care under the 1957 Act. But there is nothing in the Act to indicate that knowledge is a separate element required for liability to visitors (i.e., licensees and invitees).

[7] The 1984 Act provides:

An occupier of premises owes a duty to another (not being his visitor) in respect of [dangers due to the state of the premises or to things done or omitted to be done on them] if—

(a) he is aware of the danger or has reasonable grounds to believe that it exists;

(b) he knows or has reasonable grounds to believe that the other is in the vicinity of the danger concerned or that he may come into the vicinity of the danger (in either case, whether the other has lawful authority for being in that vicinity or not); and

(c) the risk is one against which, in all the circumstances of the case, he may reasonably be expected to offer the other some protection.

Occupiers Liability Act 1984 § 1(3).

13

in Texas premises liability law. *See Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894, 914–15 (Tex. App.—Austin 2010, no pet.) (recognizing that under Texas negligence law, one generally has a duty of care to act as an ordinary reasonable person under the same or similar circumstances); *see also Lynch v. Hilton Worldwide, Inc.*, Civil No. 11-1362 JBS/AMD, 2011 WL 5240730, at \*7 (D.N.J. Oct. 31, 2011) (stating that, under Occupiers Liability Act 1957, an English hotel owner has a statutory duty "to take such care as in all the circumstances of the case is reasonable to see that the visitor will be reasonably safe in using the premises for which he is invited or permitted by the occupier to be there."). Therefore, the trial court did not err when it refused Cal Dive's jury question requiring actual or constructive knowledge.[8] We overrule Cal Dive's second issue.

### E. The trial court did not err when it submitted the damages issues to the jury using Texas law.

In its fourth issue, Cal Dive argues the trial court erred by charging the jury using elements for personal injury damages under Texas law rather than using English law as embodied in the *Guidelines for the Assessment of General Damages in Personal Injury Cases*. In Cal Dive's view, the *Guidelines* limited Bryant to

---

[8] Cal Dive points to the transcript of the court's oral findings and judgment following a bench trial in a factually similar case, *Lowther v. H. Hogarth & Sons, Ltd.*, [1959] Vol. I Lloyd's Rep. Q.B. 171. That transcript includes some dicta to the effect that the common duty of care owed under the 1957 Act did not differ from the duty owed at common law, which required proper care to see that invitees were not exposed to unusual dangers of which the occupier knew or ought to have known. *Id.* at 177. This observation is inconsistent with the text of the 1957 Act discussed above, but we note that the *Lowther* court did not have the benefit of the 1984 Act, which requires knowledge only as to non-visitors. In any event, the *Lowther* court went on to apply the common duty of reasonable care from the 1957 Act and hold that no breach had occurred, finding that there was no danger from oil on the deck when the defendants' employee made his last examination, noting the impracticability—even when taking reasonable care—of maintaining passages so that there is never a slippery place, and observing that it was difficult to envisage what further efforts the defendants could have made to ensure oil was cleaned up at more frequent intervals. *Id.* at 178–79. As we shall see in Part II below, this case is different from *Lowther* in that there were reports of oil on the deck before Bryant slipped.

maximum damages of $20,961.  We disagree.

In his declaration, Handley provided an explanation of the elements of damages available to a personal injury plaintiff under English law.  As summarized above, these damages include general (or non-pecuniary) damages, such as physical and psychological pain and suffering and physical impairment, as well as special (or pecuniary) damages, such as loss of earning capacity and medical costs.  Because Texas law permits the recovery of the same damages as those recoverable under English law, we conclude the trial court did not abuse its discretion when it submitted Bryant's damages to the jury using a question adapted from the Texas Pattern Jury Charge.  *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003) (identifying types of damages recoverable under Texas law in a personal injury action); *see also Hatfield*, 316 S.W.3d at 57 (stating that trial court has broad discretion in submitting charge to the jury so long as charge is legally correct).

Even if we assume that the unauthenticated excerpt from the *Guidelines for the Assessment of General Damages in Personal Injury Cases* provided by Cal Dive accurately states English law on the subject, it would not change the result because the *Guidelines* deals only with general damages.  As Handley explained, general damages encompass elements such as pain and suffering, loss of mental or physical capacity, and loss of enjoyment, companionship, and consortium.  As Handley also explained, in addition to general damages, a personal injury plaintiff can recover special damages, such as loss of earning capacity and medical care.  The jury awarded Bryant only $8,000 for past physical pain and mental anguish, an amount well within the *Guidelines'* alleged $20,961 limit.  Bryant's remaining damages are special damages, which are not limited by the *Guidelines*.  We overrule Cal Dive's fourth issue.

15

**II.    Legally and factually sufficient evidence supports the jury's finding that Cal Dive breached a duty owed to Bryant.**

In its third issue on appeal, Cal Dive asserts (1) this is a premises liability case; and (2) the evidence is legally and factually insufficient that Cal Dive had actual or constructive knowledge of the oily substance's presence on the diving vessel's deck before Bryant slipped and fell. We already have rejected Cal Dive's premises liability argument. Regarding the presence of the oily substance, we conclude the evidence is legally and factually sufficient to support the jury's finding that Cal Dive breached its duty of reasonable care.

**A.    Standard of review**

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, the appellant must demonstrate on appeal that there is no evidence to support the adverse finding. *Univ. Gen. Hosp., L.P. v. Prexus Health Consultants, LLC*, 403 S.W.3d 547, 550 (Tex. App.—Houston [14th Dist.] 2013, no pet.). In conducting a legal-sufficiency review, we must consider the evidence in the light most favorable to the appealed finding and indulge every reasonable inference that supports it. *Id.* at 550–51 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id*. at 551. This Court must credit favorable evidence if a reasonable trier of fact could, and disregard contrary evidence unless a reasonable trier of fact could not. *Id*. The trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Id*.

This Court may sustain a legal sufficiency (or no-evidence) issue only if the record reveals one of the following: (1) the complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only

16

evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence established conclusively the opposite of the vital fact. *Id*. Evidence that is so weak as to do no more than create a mere surmise or suspicion that the fact exists is less than a scintilla. *Id.*

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we may set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Nip v. Checkpoint Systems, Inc.*, 154 S.W.3d 767, 769 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GTE Mobilnet*, 61 S.W.3d at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence also would support a different result. *Id.* When presented with conflicting evidence, a jury may believe one witness and disbelieve others, and it also may resolve any inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Gonzalez v. McAllen*

17

*Med. Ctr., Inc.,* 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

   **B.    The evidence is legally and factually sufficient to support the jury's verdict.**

   As detailed above, Bryant testified that after his fall and while he was waiting to be transported to the Chinese mainland, a Cal Dive deck foreman told Bryant that the oily substance in the area of his fall had been reported three times and that he hoped Bryant's fall and injury might get something done about it. Bryant also testified that he believed that the oily substance had originated from the dive ship's ROV, which had been taken out of the water about two hours before the fall and stored just above the gangway where he fell. The timing of the ROV's removal from the water was confirmed by the ship's records. We conclude this testimony is legally and factually sufficient evidence that Cal Dive had notice of the oily substance with sufficient time before Bryant fell to have done something about it, or, at minimum, Cal Dive had notice that accumulation of an oily substance in the area was a recurring problem that required attention. The evidence is therefore legally and factually sufficient that Cal Dive breached a duty owed to Bryant.

   In its appellate brief, Cal Dive asserts that the testimony of the ship's safety officer, Ian Harrison, establishes that Cal Dive did not have actual or constructive notice of the oily substance on the deck. Cal Dive specifically points to Harrison's testimony that: (1) he had not received any reports of foreign substances leaking from the ROV; (2) the ROV was not stored in the area where Bryant fell; (3) the ROV had a containment system to prevent spills; (4) Harrison regularly patrolled the ship checking for safety issues; and (5) Harrison checked the area where Bryant fell within five minutes after speaking with Bryant about the accident and Harrison found no oily substance but instead only some water in a depression that had been worn over time in the deck surface. We disagree that the testimony emphasized by Cal Dive

18

changes the result.

Cal Dive's argument is contrary to our standard of review. Specifically, this argument omits Bryant's testimony that the ROV was stored over the area where he fell and that a deck foreman had informed him the oily substance on the walkway had been reported three times prior to Bryant's fall. In addition, the argument fails to account for Harrison's own testimony that (1) he did not check the walkway where Bryant had fallen until after he had spoken with Bryant, which could have occurred as much as three hours after the incident; and (2) when Harrison finally arrived, a power washer was located next to the spot where Bryant had fallen. Finally, the argument overlooks the photographs Harrison took as part of his investigation of the incident, which showed a power washer at the scene of Bryant's fall. It is the jury's task to evaluate the credibility of witnesses and to resolve conflicts in, and then weigh, the evidence. *Golden Eagle Archery*, 116 S.W.3d at 761. The jury could have believed Bryant and disbelieved Harrison's testimony about the location of the ROV. *See McGalliard*, 722 S.W.2d at 697. The jury also could have believed Bryant's testimony that he slipped on an oily substance and reasonably concluded that the oily substance had been cleaned by the time Harrison made his way to check the walkway where Bryant had fallen. *See City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005) ("Courts reviewing all the evidence in a light favorable to the verdict must assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences in their legal sufficiency review."); *Walters v. Am. States Ins. Co.*, 654 S.W.2d 423, 426 (Tex. 1983) (stating that juries are entitled to make inferences if they are reasonable and based on the facts proved). We conclude the evidence is legally and factually sufficient and overrule Cal Dive's third issue. *See United Parcel Service, Inc. v. Rankin*, No. 04-14-00494-CV, 2015 WL 3503814, at *4 (Tex. App.—San Antonio June 3, 2015, pet. filed) (concluding

19

evidence was legally and factually sufficient based, in part, on reasonable inferences the jury could have made); *CA Partners v. Spears*, 274 S.W.3d 51, 75 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (concluding evidence was factually sufficient despite record containing evidence contradicting factual findings).

## III. The trial court did not abuse its discretion when it prohibited Cal Dive from cross-examining Bryant's economist regarding taxation.

In its fifth issue, Cal Dive asserts the trial court abused its discretion when it sustained Bryant's objection under Texas Rule of Evidence 403 and prohibited Cal Dive from cross-examining Dr. McCoin, Bryant's expert economist, regarding how he accounted for taxation in calculating Bryant's damages for lost earning capacity.

### A. Standard of review

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Barnhart v. Morales*, 459 S.W.3d 733, 742 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)). When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for the trial court's judgment. *Id.* Thus, the question is not whether this Court would have admitted the evidence. Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). Therefore, we begin by examining possible bases for upholding the trial court's decision that are suggested by the record or urged by the parties. *Id.*

Relevant evidence is generally admissible. Tex. R. Evid. 402. A trial court

may exclude relevant evidence, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403; *see Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 449 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

To obtain reversal of a judgment based on a claimed error in excluding evidence, a party must show that the trial court did in fact err and that the error probably resulted in rendition of an improper judgment. *Hooper*, 222 S.W.3d at 107. To determine whether excluded evidence probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Barnhart*, 459 S.W.3d at 742 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)). To challenge a trial court's evidentiary ruling successfully, the complaining party must demonstrate that the judgment turns on the particular evidence that was excluded or admitted. *Hooper*, 222 S.W.3d at 107 (citing *Interstate Northborough P'Ship*, 66 S.W.3d at 220). A reviewing court ordinarily will not reverse a judgment because a trial court erroneously excluded evidence when the excluded evidence is cumulative or not controlling on a material issue dispositive to the case. *Id.*

**B. The trial court did not abuse its discretion when it prohibited Cal Dive from questioning Dr. McCoin in front of the jury about how he accounted for taxation in calculating Bryant's damages.**

Cal Dive argues that the trial court abused its discretion by prohibiting it from questioning Dr. McCoin about how he accounted for taxation in calculating Bryant's damages for lost earning capacity. Cal Dive asserts that it should have been permitted to question Dr. McCoin on this subject under section 18.091(a) of the Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.091(a) (West 2015) (requiring claimants seeking damages for loss of earning capacity to

present their evidence "in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law"). Bryant objected that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice, as Cal Dive's purpose in asking Dr. McCoin this line of questioning was to paint Bryant as a bad person because he did not pay United States income taxes. The trial court agreed and sustained Bryant's objection, thereby prohibiting Cal Dive from questioning Dr. McCoin about his treatment of income taxes in the formation of his opinion.

We conclude Cal Dive has not shown the trial court abused its discretion when it sustained Bryant's Rule 403 objection. On this record, it is undisputed that (1) Bryant, an English expatriate living in Thailand, was not required to pay federal income taxes on his earnings as a deep sea diver; and (2) Dr. McCoin did account for that fact in the preparation of his opinion of lost earning capacity. Because no reduction for federal income taxes was required, Dr. McCoin's opinion complied with section 18.091(a). Thus, we conclude the trial court reasonably could have concluded that the probative value of explaining the lack of federal taxation to the jury was negligible while its potential prejudicial effect was significant. *See* Tex. R. Evid. 403; *Farmers Tex. Cnty. Mut. Ins. Co. v. Pagan*, 453 S.W.3d 454, 463 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Finally, Cal Dive has not shown on appeal how it was allegedly harmed as a result of the trial court's exclusion of this evidence. *See* Tex. R. App. P. 44.1; *Pagan*, 453 S.W.3d at 465. We therefore overrule Cal Dive's fifth issue.

## IV. Cal Dive failed to preserve its challenge to the trial court's denial of a mistrial for appellate review.

Travis Trahan, a Cal Dive vice-president, testified at trial regarding the qualifications to become a saturation diving supervisor, the time it would take to

qualify, and the amount of money that a supervisor could potentially earn, from $800 to $1,100 a day. According to Trahan, a diving supervisor position with Cal Dive, unlike a saturation diving position, did not require heavy labor. The implication from Trahan's testimony was that Bryant, even with his injured shoulder, could continue to work in the diving industry earning a very good living.

During cross-examination, Bryant's attorney questioned Trahan not only about his testimony that Cal Dive classified a diving supervisor position as a light-to-medium-duty job rather than a heavy-duty one, but also about Cal Dive's current willingness to hire Bryant as a supervisor. Cal Dive did not lodge any objection to this line of questioning. At the end of the questions regarding Cal Dive's willingness to hire Bryant as a supervisor, the parties asked the trial court for a brief recess to discuss settlement of the case. Again, Cal Dive did not object. The parties did not settle the case during the recess and when the trial resumed, Cal Dive did not ask the trial court to instruct the jury to disregard the testimony regarding the possibility of settling the case. Cal Dive instead asked the trial court to grant a mistrial based on the testimony regarding settlement, which the trial court denied. In its sixth issue, Cal Dive argues the trial court erred when it denied Cal Dive's motion for mistrial.

A trial court has discretion to grant or deny a motion for mistrial. *Schlafy v. Schafly*, 33 S.W.3d 863, 868 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In reviewing a trial court's decision on a motion for mistrial, we do not substitute our judgment for that of the trial court but instead decide only whether the trial court's decision constitutes an abuse of discretion. *Id.* A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Although offers of compromise and settlement generally are inadmissible, an error in admitting such evidence can be cured by an instruction to the jury to

disregard the evidence. *Beutel v. Paul*, 741 S.W.2d 510, 513 (Tex. App.—Houston [14th Dist.] 1987, no writ). Because Cal Dive did not object to the settlement testimony and did not request an instruction that the jury disregard the settlement testimony, it did not preserve this issue for appellate review. *See Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 862 (Tex. App.—Fort Worth 2003, pet. denied) (citing *State Bar v. Evans*, 774 S.W.2d 656, 658 (Tex. 1989)). We overrule Cal Dive's sixth issue.

## CONCLUSION

Having overruled each of the issues raised by Cal Dive and the cross-issue raised by Bryant in this appeal, we affirm the trial court's judgment.


/s/    J. Brett Busby
       Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.