**Affirmed and Memorandum Opinion filed July 2, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00003-CV

---

### ANGELA ROSS, Appellant

### V.

### WILLIAM ROSS, Appellee

---

**On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2021-41326**

---

## M E M O R A N D U M   O P I N I O N

Appellant Angela Ross and appellee William Ross filed for divorce and proceeded to a bench trial. After hearing testimony and evidence, the trial court granted the divorce and ordered a division of the parties' estate. Angela filed this appeal and, in five issues, challenges the trial court's final divorce decree. For the reasons below, we affirm.

## BACKGROUND

Angela and William were married for approximately 20 years before they filed for divorce in July 2021. The parties proceeded to a bench trial via Zoom in October 2022.

At the beginning of trial, Angela alleged that her attorney had been working for William rather than representing her interests. Angela's attorney moved to withdraw as counsel, and the trial court granted the motion. Angela represented herself *pro se* through the remainder of the trial and continues to do so on appeal.

Both William and Angela testified at trial. William also offered testimony from an expert witness regarding the valuation of his counseling business, Ross Counseling Service, PLLC. After the close of evidence, the trial court granted the parties' divorce and rendered a division of their estate. The trial court signed a final divorce decree on December 4, 2022. Angela timely filed this appeal.

## ANALYSIS

Angela raises five issues on appeal and asserts:

1. the trial court's written decree does not conform to its oral rendition made following the bench trial;
2. William's expert should have been disqualified for a conflict of interest and lacked the necessary qualifications to testify;
3. the trial court abused its discretion in denying Angela's application to designate an expert;
4. the trial court abused its discretion in denying Angela's request for a continuance; and
5. "[t]here were numerous other errors at trial."

We consider these issues individually below.

2

## I. The Trial Court's Oral Rendition

The trial court's final divorce decree includes the following in its allocation of property to Angela:

> 100% of the Prairie View 403(b) Fidelity account in [William's] name and the balance in it as of October 25, 2022.

On appeal, Angela asserts that this allocation of William's retirement accounts does not comport with the trial court's oral rendition following the bench trial. According to Angela, the oral rendition granted to her three of William's retirement accounts: two 403(b) accounts managed by Fidelity Investments and one 401(k) account managed by Strategic Education, Inc. Angela requests that we modify the trial court's final divorce decree to include in her award all three of William's retirement accounts.

The record does not show that Angela raised this issue in the trial court. Angela did not notify the trial court of an error in the final divorce decree, if any, nor did she file a motion to modify, correct, or reform the judgment. *See* Tex. R. Civ. P. 329b(g). Therefore, Angela did not preserve the issue for appellate review. *See* Tex. R. App. P. 33.1(a); *see, e.g.*, *In re Marriage of Williams*, No. 14-15-00090-CV, 2016 WL 2997094, at *1 (Tex. App.—Houston [14th Dist.] May 24, 2016, no pet.) (mem. op.) (concluding the appellant waived his argument that "the decree did not conform to the judge's oral pronouncements" because he did "not cite to any place in the record where he preserved this argument by making it in the trial court"); *Rooney v. Rooney*, No. 14-10-01007-CV, 2011 WL 3684618, at *9 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.) (concluding the appellant waived his argument that the trial court's order provided a double recovery because "he did not bring this alleged error to the attention of the trial court by filing a motion for new trial or motion to modify judgment").

We overrule Angela's first issue.

## II. William's Expert

In her second issue, Angela challenges the testimony of CPA Elicia Rideau, William's expert witness on the valuation of his business. Specifically, Angela asserts that Rideau should not have been permitted to testify at trial because (1) she had a conflict of interest, and (2) she lacked the necessary qualifications and her methods were flawed.[1]

### A. Standard of Review

"'If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.'" *Cooper Tire & Rubber Co. v. Mendez*, 204 S.W.3d 797, 800 (Tex. 2006) (quoting Tex. R. Evid. 702). Expert testimony is admissible when (1) the expert is qualified, and (2) the testimony is relevant and based on a reliable foundation. *Taber v. Roush*, 316 S.W.3d 139, 147 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588-89 (1993)). Courts determine reliability from all the evidence. *Id*. at 147-48.

The trial court's determination that these requirements have been met is reviewed for an abuse of discretion. *Mendez*, 204 S.W.3d at 800; *Taber*, 316 S.W.3d at 148. We also apply the abuse of discretion standard when the issue

---

[1] Angela raised these objections at trial and received a ruling, thus preserving the arguments for appellate review. *See* Tex. R. App. P. 33.1(a); *see also, e.g.*, *In re Marriage of Mugford*, No. 14-16-00436-CV, 2018 WL 2306737, at *4 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. denied) (mem. op.) ("To preserve a complaint that expert opinion evidence is inadmissible because it is unreliable, a party must object to the evidence before trial or when the evidence is offered.").

turns on an alleged conflict of interest. *See, e.g.*, *Formosa Plastics Corp., USA v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 447 (Tex. App.—Corpus Christi 2006, pet. denied). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Taber*, 316 S.W.3d at 148.

Similar to the issue before us now, we previously have examined the reliability of a CPA's proposed testimony regarding the analysis of financial records in the context of a divorce. *See In re Marriage of Mugford*, No. 14-16-00436-CV, 2018 WL 2306737, at *5 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. denied) (mem. op.). There, we held that the testimony's adequacy should be judged by the "general reliability" test, which we described as follows:

> When experts rely on experience and training rather than a particular methodology to reach their conclusions, reviewing courts determine whether there may be "simply too great an analytical gap between the data and the opinion proffered" for the opinion to be reliable.

*Id*. (quoting *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998)). We apply that standard here.

## B.     Rideau's Testimony

Rideau began her testimony by describing her qualifications. Rideau said she has been a practicing accountant since 2009 and received her CPA license in 2015. Rideau is employed at Mountain West Pipeline Company and also owns her own CPA business.

Rideau said she has worked with William for the past two years and performs bookkeeping and completes tax returns for Ross Counseling Service. Rideau said she also has prepared joint tax returns for William and Angela.

Rideau prepared a valuation report for Ross Counseling Service using the "excess earnings method." According to Rideau, this method "looks at what his

5

business is earning over the last several years, it weighs each year by the most recent to least recent, and takes that in addition to the assets and liability of the business to perform the valuation." Rideau said she felt comfortable using this method given that she had "been doing [William's] bookkeeping for the last several years, as well as preparing his tax returns."

Rideau described two other valuation methods and her reasons for not utilizing them to value Ross Counseling Service. Rideau described the "fair market value method," which takes into account "actual offers to buy the business." Rideau said she chose not to employ this method because there is "not a super huge market of people who can buy this type of practice" that essentially is based on William's "goodwill, and his education, and his background." Rideau described a second valuation method "based on the balance sheet," which would have entailed examining "the assets that we can sell" and "the liabilities that we would need to pay off." According to Rideau, she did not use this method because there were "not a lot of balance sheet or liability accounts" for physical assets. Rather, Ross Counseling Service was primarily an "accounts payable, accounts receivable" business.

Rideau said she completed her valuation based on three years of Ross Counseling Service's operations: 2018, 2019, and 2020. According to Rideau, she relied on the business's income statements, tax returns, business expense receipts, and bank accounts. Rideau opined that Ross Counseling Service would continue to be profitable because "there were multiple insurance providers that use him, and so he was paid through contracts with the U.S. courts, as well as the Texas Department of Justice, as well as third-party insurance providers." Rideau valued the business at $370,898.84, with a range of $333,000-$407,000. Rideau's written valuation report also was admitted into evidence.

Rideau said this is the first business valuation she has completed. Rideau said she felt comfortable performing the valuation because she employed a method "based on mathematical formulas" that "leaves very little room for error or for judgment." Rideau also testified that she is "familiar with [William's] earnings based on doing his books, his monthly bookkeeping" and preparing the business's income tax returns.

According to Rideau, she also completed two joint tax returns for William and Angela. Rideau said the 2020 joint tax return was completed after William and Angela had separated. Rideau testified that she presented the tax return to Angela for her signature, which Angela signed after reviewing the return and asking several questions.

## C.    Application

In her first challenge to Rideau's testimony, Angela asserts that a conflict of interest warranted the exclusion of the expert testimony because Rideau prepared a joint income tax return for Angela and William. We disagree.

Angela does not point to any evidence in the record suggesting that Rideau was provided confidential information from Angela that would inhibit Rideau's ability to provide an accurate valuation of William's business. Rather, the record suggests that Rideau's and Angela's interactions were limited to the completion of and signature on the parties' joint tax return. Moreover, William was the only party earning an income during the years Rideau filed the parties' joint income tax return, further limiting the amount of information Rideau would have received from Angela and the substance of their interactions.

Likewise, Angela does not cite — and our research did not find — any cases holding that a conflict of interest existed in analogous circumstances. Considering

7

the record as a whole, it does not include any indication that Rideau's relationship with Angela impacted her valuation of Ross Counseling Service. Therefore, the trial court did not abuse its discretion in overruling Angela's objection on this ground. *See Mendez*, 204 S.W.3d at 800; *Formosa Plastics Corp., USA*, 216 S.W.3d at 447.

Second, Angela summarily asserts that Rideau "lacked the necessary qualifications and her methods were flawed." We disagree with this characterization of Rideau's testimony.

We set out Rideau's background above: she has been working in accounting since 2009, earned her CPA in 2015, and has completed the bookkeeping and tax returns for Ross Counseling Service for two years. Rideau also provided a detailed overview of the valuation methods available to her and her reasons for selecting the excess earnings method. Rideau's valuation report provides further details regarding the specifics of her valuation. Taken together, this evidence provides an analytical foundation sufficient to support Rideau's expert testimony. *See In re Marriage of Mugford*, 2018 WL 2306737, at *5. Therefore, the trial court did not abuse its discretion in overruling Angela's objection on this ground. *See Mendez*, 204 S.W.3d at 800.

Having overruled Angela's arguments on this point, we overrule her second issue in its entirety.

## III. Angela's Application to Designate an Expert

In her third issue, Angela asserts "it was an abuse of discretion to deny [her] application to designate an expert."

Angela filed her motion for leave to designate an expert witness approximately two months before trial and William filed a response opposing the

requested leave. The clerk's record does not show that the trial court ruled on Angela's motion for leave. Angela did not re-assert her motion for leave at trial nor did she object to the trial court's failure to rule on the motion.

As a prerequisite to presenting an evidentiary complaint for appellate review, the complaining party must object to the evidence and obtain a ruling. *See* Tex. R. App. P. 33.1(a); *see also Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007) (per curiam). Because Angela did not obtain a ruling on her motion for leave or object to the trial court's failure to rule on it, she failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a); *Bay Area Healthcare Grp., Ltd.*, 239 S.W.3d at 235; *see also, e.g., Cal Dive Offshore Contractors Inc. v. Bryant*, 478 S.W.3d 914, 921 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (the appellant's failure to obtain a ruling on motion to strike did not preserve his arguments for appellate review).

We overrule Angela's third issue.

## IV. Angela's Request for a Continuance

In her fourth issue, Angela asserts the trial court erred in denying her request for a continuance after her counsel was permitted to withdraw. We review the denial of a request for continuance under the abuse of discretion standard. *In re Marriage of Moncur*, 640 S.W.3d 309, 320-21 (Tex. App.—Houston [14th Dist.] 2022, no pet.). We conclude that showing is not made here.

When the case was called to trial, Angela immediately stated that she did not "have anyone representing" her and alleged that there had been "much corruption, lies, and intimidation." Angela asserted that her attorney, Delaney, was working for William rather than for her. Angela also asserted that William "has been hacking everything."

9

Responding to these allegations, Delaney said: "I have absolutely no idea why she's making these allegations. I have worked my butt off on this case, and I think Angela knows that." Noting that this was "a complete surprise," Delaney made an oral motion to withdraw because he apparently lacked "the confidence of [his] client."

The trial court asked Angela if she intended to discharge Delaney. In response, Angela asserted (1) she "just didn't trust" Delaney; (2) this was the third attorney that had been "enticed by William Ross"; (3) if she had to proceed, "there's no way it will be fair"; (4) she "felt like [she] had no one on [her] side"; and (5) she was limited to what she could do online because "all [her] electronics have been hacked." The trial court granted Delaney's request to withdraw and instructed him to file an order granting the requested withdrawal.

The trial court then turned to other pre-trial matters. When the order on withdrawal was ready, the trial court had the following exchange with Delaney:

Trial Court: If [Angela] is able to, I'd like for her to come back.

Let's just state for the record that [Angela] put her phone down, I'd say 30 minutes ago, and she hasn't come back to it. We're looking at what appears to be a hotel room mirror, maybe.

And then Mr. Delaney has called her name on the Zoom, she didn't answer. And he says that – I believe you said, sir, you tried calling her, but that her ringer is off.

Delaney: Yes. My phone, when I tried to contact her by texting or by phone, it says that she silenced her notifications.

Trial Court: Okay. [Angela], if you can hear us, we need you to come back.

I'm going to need her to come back so that I can tell

10

> her what, what her attorneys are requesting that I do, and determine, also, whether she's asking for additional time if I allow her attorneys to do what her attorneys are trying to do. And I need her to tell me that.
>
> If she isn't here in the next five minutes, I'm going to consider her to have left in the middle of our trial, then we'll continue.

Angela did not return in the next five minutes.[2] The trial court granted Delaney's motion to withdraw. In Delaney's "last duty . . . before withdrawing," he made "an oral motion for continuance, in case [Angela] wants to get a fourth attorney." William objected to the continuance, pointing out that the trial court had already granted previous continuances. The trial court denied the requested continuance.

Based on this sequence of events, we conclude the trial court did not err in denying Angela's oral request for a continuance. We overrule Angela's fourth issue.

## V.    "Other Errors"

In her fifth issue, Angela summarily argues that the trial court should have (1) divided the $280,000 in the parties' joint account equally rather than awarding it to William, and (2) should have ordered that the $21,000 debt from Akard plumbing be split between the parties.

In dividing the parties' community estate, the trial court shall render a division of property it deems just and right, having due regard for each party's rights. Tex. Fam. Code Ann. § 7.001; *Maxwell v. Maxwell*, No. 14-20-00298-CV, 2021 WL 4956881, at \*17 (Tex. App.—Houston [14th Dist.] Oct. 26, 2021, pet. denied) (mem. op.). This standard vests the trial court with broad discretion in

---

[2] Angela returned to the Zoom trial later in the proceedings when William's expert was testifying.

11

dividing the marital estate and we will not disturb this division on appeal unless the complaining party shows that the division was so unjust and unfair as to constitute an abuse of discretion. *Murff v. Murff*, 615 S.W.2d 696, 698-99 (Tex. 1981); *Maxwell*, 2021 WL 4956881, at *17.

Angela did not make that showing here. As summarized above, she baldly asserts that the trial court erred in its allocation of two assets. Angela does not cite any case law to support these contentions. Nor does she analyze these assets' allocation in the context of the overall division of the parties' sizable community estate, which includes three homes, three vehicles, numerous bank and investment accounts, retirement accounts, and William's business. Therefore, Angela's conclusory argument is insufficient to show that the trial court's allocation of the parties' joint account and the Akard plumbing bill constitutes an abuse of discretion. *See also, e.g.*, *Michelena v. Michelena*, No. 13-09-00588-CV, 2012 WL 3012642, at *9 (Tex. App.—Corpus Christi June 15, 2012, no pet.) (mem. op.) (overruling the husband's challenge to the allocation of an asset when he "cites to no legal authority in support of this assertion, and his argument in support of this issue consists of two or three conclusory sentences with no substantive analysis").

We overrule Angela's fifth issue.

## CONCLUSION

Having overruled all of Angela's issues on appeal, we affirm the trial court's December 4, 2022 final decree of divorce.

12

/s/    Meagan Hassan
       Justice


Panel consists of Justices Wise, Spain, and Hassan.