**Affirmed and Majority and Dissenting Opinions filed December 16, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00048-CV

---

### FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, Appellant

### V.

### ASHLEE ELIZABETH PAGAN, Appellee

---

**On Appeal from the 60th District Court
Jefferson County, Texas
Trial Court Cause No. B-182,564**

---

## M A J O R I T Y   O P I N I O N

Appellant Farmers Texas County Mutual Insurance Company appeals from a final judgment following a jury trial in which the only contested issues were the cause and extent of the personal injuries appellee Ashlee Elizabeth Pagan suffered in a car wreck. Farmers contends the trial court abused its discretion when it excluded evidence regarding an incident Pagan had with a horse, which Farmers alleged was a potential cause of the personal injuries at issue here. Farmers also

argues the evidence regarding the cause and extent of Pagan's injuries is factually insufficient to support the judgment. Because we conclude that Farmers did not establish that the trial court abused its discretion when it excluded Farmers' proffered evidence and that the admitted evidence is factually sufficient to support the judgment, we overrule Farmers' issues and affirm the trial court's judgment.

## BACKGROUND

In March 2008, Pagan's truck struck another car that had turned in front of her. The impact was hard enough that Pagan's truck bounced off the other car and struck a fence in a nearby parking lot. Pagan alleged that the crash injured various parts of her body, including her neck and left shoulder. Pagan filed suit alleging the driver of the other car was negligent and caused the crash that resulted in her injuries as well as property damage to her truck. Seeking coverage under her underinsured motorist insurance policy, Pagan added Farmers as a defendant in the lawsuit. After settling with the other driver, the case proceeded to a jury trial in which the only disputed issues were the cause and the extent of Pagan's alleged personal injuries.[1]

Before trial, the court granted Pagan's motion in limine requiring Farmers to approach the bench before referencing in any manner (1) any injuries Pagan may have suffered after the 2008 car crash, or (2) a specific incident in April 2009 when a horse spooked as Pagan was leading it into a barn, pushing her down.

At trial, Pagan testified about the car crash and said that she started feeling the physical effects of the accident the same evening when her neck, back, and shoulder started hurting. Pagan also testified that she went to the hospital the day

---

[1] Farmers stipulated that the other driver in the motor vehicle collision was solely negligent and that her negligence proximately caused the collision. Farmers also did not dispute that Pagan was an insured under the policy at issue.

2

after the crash, where she reported the problems she was having with her neck, back, and left foot as a result of the crash.[2]  The hospital's records confirmed Pagan's report of back, neck, and collarbone pain and documented point-tenderness and limited range of motion in her back and neck.  Pagan testified that she continued having pain in her neck and shoulder and that she reported those issues to personnel at the office of Dr. Faseler, her family doctor, during most, if not all, of her subsequent appointments even though those reports are not noted in her records.  The records do reflect, however, that Dr. Faseler prescribed pain medication for Pagan.  Pagan also testified regarding the negative impact the injuries she suffered during the crash have had on her life activities.

Pagan's boyfriend, Josh McFarland, confirmed that Pagan began experiencing a great deal of pain and discomfort in her neck and shoulder the evening of the crash.  McFarland also testified regarding the negative impact the injuries caused by the crash have had on Pagan's ability to participate in her normal activities.

Finally, the jury heard from Dr. Carl Beaudry, an orthopedic surgeon treating Pagan.  Dr. Beaudry testified that Pagan sought treatment for longstanding pain in her neck and left shoulder.  Dr. Beaudry further testified that Pagan had a degenerative disk in her neck as well as chronic bursitis, tendinitis, and a rotator cuff problem in her left shoulder.  Because there had been no history of shoulder problems before the crash, Dr. Beaudry opined that Pagan's current problems with her shoulder were caused by the crash.  Dr. Beaudry further opined that, based on reasonable medical probability, Pagan would need arthroscopic shoulder surgery in the near future.  In Dr. Beaudry's opinion, the purpose of that surgery would be to treat problems caused by the March 2008 crash, and it would cost between $20,000

---

[2] Pagan's foot injury has completely healed and is not at issue in this lawsuit.

and $25,000.

Before the case was submitted to the jury, Farmers made an offer of proof in an effort to admit five items of evidence it argued were related to the April 2009 horse incident. First, Farmers sought to introduce Pagan's answer to Interrogatory 13, which asked her to list any injuries she sustained during the prior ten-year period as well as any medical providers she saw as a result. Pagan answered that she "went to Diagnostic Health in Port Arthur, Texas in April of 2009 after I fell off a horse." Farmers argued it should be allowed to read that answer to the jury because the horse incident was at least partially responsible for the injuries Pagan claimed were caused entirely by the March 2008 crash.

Second, Farmers sought the admission of Pagan's April 2009 medical records from Diagnostic Health, Port Arthur. The Diagnostic Health records documented x-rays taken of Pagan's shoulders and spine in response to a referral by Dr. Faseler, her family doctor, soon after the 2009 horse incident. In addition to reporting Pagan's spine and shoulders were normal, the records contained the following: "Clinical History: Trampled by horse, contusions."

Third, Farmers sought to introduce additional excerpts of her records from Dr. Faseler. Farmers sought to admit these excerpts because they did not show Pagan complaining about a sore neck and shoulder until April 7, 2009, which was after the horse incident. Farmers argued the proffered medical records should be admitted because they were relevant to its contention that the 2009 horse incident was at least partially responsible for the injuries Pagan claimed were the exclusive result of the March 2008 crash.

Fourth, Farmers cross-examined Pagan outside the presence of the jury as part of its offer of proof. Farmers asked Pagan about the notation in the Diagnostic Health records that she had been trampled by a horse. While Pagan admitted Dr.

4

Faseler had referred her to Diagnostic Health for x-rays in the wake of the 2009 horse incident, she denied that she had been trampled. Instead, she explained that the 2009 horse incident occurred when she was walking her horse inside a barn. According to Pagan, the horse spooked as she was trying to lead it through a narrow door; the horse then darted forward, pushed her, and she fell down. Pagan denied that the horse stepped on her during the incident. Pagan admitted she went to see her family doctor after the incident at the insistence of her parents. When asked if she had any explanation why the Diagnostic Health records described the incident as being trampled by a horse, Pagan offered that the physician's assistant she frequently saw in Dr. Faseler's office often did not write a lot of things down during her visits and that the physician's assistant had probably heard something about a horse accident and mistakenly assumed Pagan had been trampled by a horse. Pagan also admitted that five months after the 2009 horse incident she returned to Diagnostic Health for an MRI of her left shoulder. Finally, Pagan testified that she did not believe the 2009 horse incident was related to the injuries she was complaining about in her lawsuit against Farmers.

Fifth, Farmers offered additional deposition testimony by Dr. Beaudry, her treating orthopedic surgeon. Farmers offered this additional deposition testimony as one entire package.[3] The proffered deposition testimony included Dr. Beaudry's concessions that he had not seen any medical records containing a reference to Pagan being trampled by a horse—even though such records were in his own files—and he was not otherwise aware that she had been trampled by a horse. He also testified that he had no reason to question the accuracy of the Diagnostic Health records noting that Pagan had been trampled by a horse. Dr.

---

[3] During its offer of proof, Farmers' counsel informed the trial court that Farmers "would request that we be allowed to have the jury back in the box and that we be able to present this video evidence in its entirety."

Beaudry said this would be an important piece of a patient's medical history that he would want to know before treating that patient. In addition, Dr. Beaudry said he would want to know when the horse trampling occurred relative to the 2008 car crash. Dr. Beaudry also testified it is "possible" that a horse trampling its rider "could cause an injury similar to the one that Ms. Pagan is complaining about and seeking treatment for." Finally, Dr. Beaudry testified that if Pagan had been trampled by a horse, it would be prudent for a doctor to perform the same type of diagnostic testing that she had been undergoing to confirm whether the trampling had injured her.

In addition to the questions related to the 2009 horse incident, the proffered deposition testimony also included questions regarding other injuries and illnesses experienced by Pagan unrelated to either the 2008 crash or the 2009 horse incident. These included a 2003 car accident in which Pagan injured a finger. They also included questions regarding a separate 2003 horse incident in which Pagan was bucked off a horse and suffered contusions. The questions revealed that Pagan was sent for a CAT scan that discovered she had a defective kidney which led to her having kidney surgery. The questions also revealed that Pagan had difficulty with anxiety and depression and had been prescribed medication to address those issues. The proffered deposition questions also addressed medical records from M. D. Anderson from August 2009; these lacked any mention that Pagan was experiencing neck and shoulder issues but did reveal that she was to receive a "colposcopy."

Pagan objected that there was no evidence linking the incidents referred to in these offers with the injuries for which she sought damages, and the trial court denied all of Farmers' tenders of evidence. The court then submitted a single question to the jury, which found that Pagan was entitled to a total recovery of

6

$50,000 as actual damages, including $20,000 for future medical expenses.  The trial court offset against the jury's finding $25,000 for the amount the driver of the other car paid in settlement of Pagan's claim, signing a final judgment awarding Pagan $25,000 plus prejudgment and post-judgment interest.  This appeal followed.

ANALYSIS

**I.     Farmers did not establish that the trial court abused its discretion when it excluded Farmers' proffered evidence regarding Pagan's April 2009 horse incident.**

In its first issue, Farmers contends the trial court abused its discretion when it excluded the five items of evidence detailed above because they were relevant to the causation, duration, and extent of Pagan's alleged injuries caused by the 2008 car crash as well as the resulting medical damages.

**A.     Standard of review**

The decision to admit or exclude evidence lies within the sound discretion of the trial court.  *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Certain Underwriters at Lloyd's, London v. Chicago Bridge & Iron Co.*, 406 S.W.3d 326, 338 (Tex. App.—Beaumont 2013, pet. denied).  A trial court exceeds its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles.  *Caffe Ribs, Inc. v. State*, 328 S.W.3d 919, 927 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)).  When reviewing matters committed to the trial court's discretion, a reviewing court may not substitute its own judgment for the trial court's judgment.  *Id.*  Thus, the question is not whether this Court would have admitted the evidence.  Rather, an appellate court will uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling, even if that ground

7

was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (op. on reh'g). Therefore, we examine all bases for upholding the trial court's decision that are suggested by the record or urged by the parties. *Id.*

Relevant evidence is generally admissible. Tex. R. Evid. 402. A trial court may exclude relevant evidence, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *see Strauss v. Continental Airlines, Inc.*, 67 S.W.3d 428, 449 (Tex. App.—Houston [14th Dist.] 2002, no pet.). In addition, a court may exclude an expert opinion when it is conclusory or the basis offered for it is unreliable. Tex. R. Evid. 702; *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816–17 (Tex. 2009).

To obtain reversal of a judgment based on a claimed error in excluding evidence, a party must show that the trial court did in fact err and that the error probably resulted in rendition of an improper judgment. *Hooper*, 222 S.W.3d at 107. To determine whether excluded evidence probably resulted in the rendition of an improper judgment, an appellate court reviews the entire record. *Caffe Ribs, Inc.*, 328 S.W.3d at 927 (citing *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001)). To challenge a trial court's evidentiary ruling successfully, the complaining party must demonstrate that the judgment turns on the particular evidence that was excluded or admitted. *Hooper*, 222 S.W.3d at 107 (citing *Interstate Northborough P'Ship*, 66 S.W.3d at 220). A reviewing court ordinarily will not reverse a judgment because a trial court erroneously excluded evidence when the excluded evidence is cumulative or not controlling on a material issue dispositive to the case. *Id.*

**B.**	**The trial court did not abuse its discretion when it excluded Farmers' proffered evidence.**

Farmers argues that the trial court abused its discretion when it excluded evidence related to the 2009 horse incident. Farmers begins by pointing out the general principle that a defendant may cross-examine a plaintiff regarding previous injuries, claims, and actions when they are relevant to show that the plaintiff's present physical condition is not the result of the injury presently sued for, but was caused in whole or in part by an earlier or subsequent injury or a pre-existing condition. *Russell Stover Candies, Inc. v. Elmore*, 58 S.W.3d 154, 158 (Tex. App.—Amarillo 2001, pet. denied). In addition, a defendant may introduce evidence—typically an expert opinion—regarding another "plausible cause" of the plaintiff's injury, and the plaintiff must then exclude that cause with reasonable certainty. *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010).

But these general principles "of alternative causation [are] not a free ticket to admission of evidence," which must still meet admissibility requirements including relevance, reliability of expert testimony under Rule 702, and the Rule 403 balancing test. *Baker v. Dalkon Shield Claimants Trust*, 156 F.3d 248, 252 (1st Cir. 1998). Under these requirements, a defendant must provide a competent factual basis showing that an alternative cause is a plausible one before evidence of that cause will be presented to the jury. *See Brownsville Pediatric Ass'n v. Reyes*, 68 S.W.3d 184, 195 (Tex. App.—Corpus Christi 2002, no pet.) (holding reliability requirement applies equally to defense expert witness testifying about alternative causes of plaintiff's injury); *Cruz ex rel. Cruz v. Paso Del Norte Health Found.*, 44 S.W.3d 622, 632–33 (Tex. App.—El Paso 2001, pet. denied) (concluding that although defensive theories regarding alternative causes need not be established "within reasonable medical probability," there must be "factual support in the

9

record justifying [their] application");[4] *Harris v. Belue*, 974 S.W.2d 386, 393–94 (Tex. App.—Tyler 1998, pet. denied) ("Without factual support in the record justifying the application of these [alternate] theories [of causation], they rise to little more than conjecture . . . .").[5] Admitting evidence of another cause without such a showing is nothing more than an invitation for the jury to speculate about causation—a circumstance the Supreme Court of Texas has consistently condemned. *Jelinek v. Casas*, 328 S.W.3d 526, 537 (Tex. 2010).

In this appeal, Farmers contends the jury should have been allowed to decide "[w]hether [Pagan's] 2009 horse trampling accident proximately caused, in whole or part, [her present] incapacity." In Farmers' view, the five excluded categories of evidence were admissible because (1) the 2009 horse incident occurred after the March 2008 car crash, (2) the incident "very well could have caused [Pagan's] lasting neck and shoulder injuries at issue in this] lawsuit," and (3) the incident happened closer in time to the testing and treatment of those injuries. Farmers offered no competent evidence supporting its second proposition, however. We also conclude Farmers has not demonstrated that the trial court abused its discretion when it excluded the evidence because the court could reasonably have done so pursuant to Rules 403 and 702. Nor has Farmers shown that any error in excluding the evidence was harmful. Below, we explain these conclusions with respect to each of the excluded categories of evidence.

---

[4] Contrary to our dissenting colleague's characterization, we do not hold that a defendant must also go further and prove that the plausible cause is, to a reasonable degree of medical certainty, a proximate cause.

[5] *See also* Harvey Brown & Melissa Davis, *Eight Gates for Expert Witnesses: Fifteen Years Later*, 52 Hous. L. Rev. 1, 9 n.37 (2014) ("[T]he defense expert who is only testifying as to possible causes does not have to provide a reliable basis for concluding that the identified cause is the most likely cause of the injury. But the defense expert nonetheless needs a reliable basis for an opinion that another cause is plausible; otherwise, the expert is engaging in pure speculation.").

First, in the excluded interrogatory answer, Pagan stated only that she had gone to Diagnostic Health in April 2009 after she fell off a horse. Pagan did not state in her answer that she had injured her neck or shoulder as a result of that fall. Second, the proffered Diagnostic Health records noted Pagan had been trampled by a horse and had suffered immediate injuries in the form of contusions (i.e. bruises); they did not show that Pagan had suffered a lasting injury to her neck or shoulder because the x-rays taken soon after the incident revealed that her spine and shoulders were normal. As to these two items of evidence, the court could reasonably conclude that informing the jury about a horse incident with no apparent connection to the lasting injuries at issue in this case would confuse the issues and mislead the jury. *See* Tex. R. Evid. 403.

Third, the excluded excerpts of Dr. Faseler's medical records note that Pagan reported neck and shoulder pain at a time that was shortly after the 2009 horse incident, but they do not mention the incident. Even if the records discussed above regarding the 2009 horse incident are considered together with the subsequent reporting of pain, however, this evidence of correlation is not a competent factual basis for lay jurors to conclude that it is plausible the horse incident caused the lasting injuries for which Pagan recovered damages in this case.

As the supreme court has explained, competent evidence is required to show a causal connection between an occurrence and a physical condition, and care must be taken to avoid the fallacy that a temporal correlation between the two implies causation. *Jelinek*, 328 S.W.3d at 533; *Guevara v. Ferrer*, 247 S.W.3d 662, 667–68 (Tex. 2007). Although correlation evidence may be probative when combined with other evidence of causation, *see Guevara*, 247 S.W.3d at 668, there is no other evidence here that the 2009 horse incident caused the neck and shoulder

11

injuries at issue. Furthermore, Farmers did not offer expert testimony to show that its correlation evidence supported causation, and this case is not one of the "limited circumstances" in which expert testimony regarding the causal connection between an occurrence and a physical condition is unnecessary. *Id.* at 667. Shortly after the horse incident, Pagan both reported pain and received normal x-rays. Without expert assistance, the jury was ill-equipped to weigh these conflicting facts and determine whether the horse incident caused Pagan's lasting injuries. *See City of Laredo v. Garza*, 293 S.W.3d 625, 632 (Tex. App.—San Antonio 2009, no pet.). Under these circumstances, the trial court could reasonably have concluded that any probative value of the excluded evidence was substantially outweighed by the danger of confusing and misleading the jury by allowing it to speculate about causation based on nothing more than temporal correlation. *See* Tex. R. Evid. 403.

For the same reasons, Farmers cannot demonstrate harm from excluding its evidence of the 2009 horse incident and Pagan's subsequent reporting of pain. Because Farmers' proffered evidence provides no factual basis for concluding that the horse incident was a plausible cause of the lasting injuries at issue here, Pagan's expert was not required to exclude that incident as a cause. *Crump*, 330 S.W.3d at 218 (holding plaintiff need not disprove or discredit every other possible cause). Thus, we cannot say that the judgment turned on the excluded evidence regarding the horse incident.

The excluded excerpts of Dr. Faseler's medical records also showed no reports of neck or shoulder problems by Pagan in the months following the 2008 car wreck. To the extent that Farmers sought to admit the record excerpts for this purpose, Farmers had already made the same point to the jury based on other admitted evidence.[6] Thus, the court could reasonably have excluded these records

---

[6] Specifically, Farmers cross-examined Pagan in front of the jury about other portions of

as needless presentation of cumulative evidence. *See* Tex. R. Evid. 403.

Fourth, in her excluded testimony, Pagan denied suffering any injury to her neck and shoulder as a result of the 2009 horse incident. The excluded testimony also addressed her 2003 car accident and the 2003 incident in which she was bucked off a horse. The trial court could reasonably have concluded that informing the jury about these incidents with no apparent connection to the injuries at issue in this case would confuse the issues and mislead the jury. *See* Tex. R. Evid. 403.

Fifth, Dr. Beaudry's excluded deposition testimony was offered "in its entirety," and Farmers' counsel clarified in response to questions from the trial court that "[w]e want the whole thing in." The excluded portions of his testimony addressed not only the 2009 horse incident but also Pagan's 2003 car accident and 2003 horse incident, her kidney surgery, her treatment for anxiety and depression, and her treatment at M.D. Anderson. The trial court could reasonably have concluded that disclosing such sensitive personal information that bore no apparent relationship to the injuries in question would be unfairly prejudicial and would confuse the issues and mislead the jury. *See* Tex. R. Evid. 403. In response to Pagan's objection that Farmers had not established a link between its proffered evidence and Pagan's injuries, Farmers did not limit its offer to testimony regarding the 2009 horse incident. Thus, the exclusion of these portions of Dr. Beaudry's testimony provides no ground for complaint on appeal. Tex. R. Evid. 105(b); *see also Pennington v. Brock*, 841 S.W.2d 127, 132 (Tex. App.—Houston [14th Dist.] 1992, no writ) ("It is well settled that where evidence is offered as a whole, only part of which is admissible, the Court does not commit error in

---

Dr. Faseler's records that were admitted into evidence. As Farmers pointed out, those records do not show that Pagan reported any neck or shoulder problems in the months following the 2008 car wreck.

sustaining an objection to such testimony, and in such case it is not the duty of the Court or the party objecting thereto to separate the admissible from the inadmissible." (internal quotation marks omitted)).

Moreover, Dr. Beaudry's testimony is not reliable evidence that Pagan suffered an injury to her neck or shoulder as a result of the 2009 horse incident, or that there was a link between the 2009 horse incident and her complaints at issue during the trial. In his offered deposition testimony, Dr. Beaudry stated that in his medical opinion it is "possible that an incident involving a horse trampling its rider could cause an injury similar to the ones that Ms. Pagan is complaining about." But Dr. Beaudry had not reviewed the Diagnostic Health records regarding Pagan's treatment following the horse incident, so the only reason he was able to give for his opinion was that "being thrown off of a horse is a, you know, violent accident. . . . A lot of things can happen, you know." Because Dr. Beaudry did not know what things happened during this particular horse incident, his opinion that trampling in general could possibly cause a similar injury is conclusory and unreliable. *Pollock*, 284 S.W.3d at 818 ("If no basis for the opinion is offered, or the basis provides no support, the opinion is merely a conclusory statement . . . ."). Thus, to the extent Farmers offered Dr. Beaudry's opinion as evidence that the horse incident caused at least some of the injuries at issue, the trial court could reasonably have concluded that this opinion would not assist the jury. *See* Tex. R. Evid. 702.[7]

_____

[7] At trial, Farmers stated that it wanted to admit evidence regarding the horse incident so it could "tell [the jury Pagan] was, in fact, injured by the horse." On appeal, Farmers contends the evidence should have been admitted to allow the jury to decide "[w]hether [Pagan's] 2009 horse trampling accident proximately caused, in whole or part, [her present] incapacity." Our dissenting colleague argues, however, that Farmers' purpose in offering Dr. Beaudry's testimony was not in fact to prove that the horse incident could have caused the injuries at issue, but to show flaws in the reliability of Dr. Beaudry's differential diagnosis, and thus Farmers did not have to show that the horse incident was a plausible cause of the injuries before the evidence

For these reasons, we hold the trial court did not abuse its discretion by excluding the evidence offered by Farmers. The trial court could reasonably have concluded under Rule 403 that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, and under Rule 702 that Dr. Beaudry's opinion regarding horse incident causation was unreliable. We may uphold the court's ruling on these bases regardless of whether they were raised below. *Hooper*, 222 S.W.3d at 107. Farmers also failed to show that any error in excluding this evidence was harmful. We therefore overrule Farmers' first issue on appeal.

## II. The evidence supporting the trial court's judgment is factually sufficient.

In its second issue, Farmers contends the evidence is factually insufficient to support the jury's findings on the causation, duration, and extent of Pagan's injuries as well as the amount of her medical damages.

In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). When a party challenges the factual sufficiency of the evidence supporting a finding for which it did not have the burden of proof, we may set aside the verdict only if it is so

---

could be admitted. We disagree. Even if a reliability challenge could constitute a separate purpose for offering this evidence, Farmers did not mention that purpose to the trial court. Accordingly, we do not address whether the trial court would have erred in excluding the evidence if offered for that purpose. *Cf. Logan v. State*, 71 S.W.3d 865, 869–870 (Tex. App.— Fort Worth 2002, pet. ref'd) (holding that although affidavit of non-prosecution might have been admissible for impeachment, trial court did not abuse its discretion in excluding affidavit because it was not offered for that purpose).

contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Ellis*, 971 S.W.2d at 407; *Nip v. Checkpoint Systems, Inc.*, 154 S.W.3d 767, 769 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). This Court is not a factfinder. *Ellis*, 971 S.W.2d at 407. Instead, the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 615–16. Therefore, we may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would also support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict; we need not do so when affirming a jury's verdict. *Gonzalez v. McAllen Med. Ctr., Inc.,* 195 S.W.3d 680, 681 (Tex. 2006) (per curiam).

Farmers contends that the evidence is factually insufficient to support the judgment. In making this argument, Farmers points out that (1) Pagan denied ambulance service at the scene of the car crash and did not seek medical attention until the day after the crash; (2) while Pagan did complain about pain in her neck, back, and foot when she went to the emergency room the day after the crash, she did not specifically complain about pain in her shoulder; (3) there was no mention of the car crash or neck, back, and shoulder pain in Dr. Faseler's medical records until more than a year after the accident; (4) medical records from Pagan's November 2009 consultation with Dr. Talbert, an orthopedic doctor at Beaumont Bone & Joint Institute, indicate that Dr. Talbert concluded she had no indication of rotator cuff pathology, did not believe she would require surgery, and

16

recommended only physical therapy; (5) Pagan sought a second opinion from Dr. Beaudry, who continued to run tests on Pagan and placed her on a conservative treatment plan through 2010 and into 2011; and (6) Pagan's medical records indicate she saw a neck specialist in May 2011 who did not believe she would require surgery on her neck. Farmers concludes by arguing that the evidence casts "serious doubt on whether [Pagan's] injuries" were caused by the 2008 car crash or "will require surgery in the future . . . ."[8]

When evaluating the factual sufficiency of the evidence, we consider all the evidence. Therefore, we must also take into account evidence supporting the judgment that Farmers does not mention when it argues the evidence is factually insufficient. This evidence includes the testimony of both Pagan and her boyfriend that she began experiencing serious pain in her neck, shoulder, and back soon after the crash occurred, as well as the records from her hospital visit following the collision that document neck and back pain. Pagan also testified that she reported pain in her neck and shoulder to Dr. Faseler's nurse in post-crash visits, and Dr. Faseler's records reflect that she was prescribed medication during one of those visits "for complaints of pain." In addition, Farmers overlooks Dr. Beaudry's testimony that in his medical opinion (1) Pagan's shoulder and neck problems resulted from the 2008 collision; (2) Pagan would need surgery on her shoulder in the near future to address those problems; and (3) the cost of that surgery would be between $20,000 and $25,000. Farmers also does not acknowledge the testimony of both Pagan and her boyfriend regarding the impact that the 2008 crash has had on her, including the amount of pain she has suffered as well as the negative

---

[8] Farmers has not assigned as error that the evidence is legally insufficient to support the verdict, much less argued that Dr. Beaudry's differential diagnosis is unreliable and amounts to no evidence of causation (e.g. because it is based on subjective guesswork or false assumptions). Accordingly, we may not consider those issues. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993).

impact it has had on her ability to participate in those activities she enjoyed prior to the accident.

It was the province of the jury to resolve any conflicts in the evidence and to judge the credibility of the witnesses and the weight to be given to their testimony. *Kamat v. Prakash*, 420 S.W.3d 890, 904 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Having examined all of the evidence, we conclude the jury's answer to the sole question submitted to it was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Farmers' second issue on appeal.

## CONCLUSION

Having overruled both issues raised by Farmers in this appeal, we affirm the trial court's judgment.


/s/       J. Brett Busby
Justice


Panel consists of Justices McCally, Busby, and Donovan (McCally, J., dissenting).

18