# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00242-CV

**Guillermo Ochoa-Cronfel, Appellant**

**v.**

**Patrick C. Murray, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-11-002136, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Guillermo Ochoa-Cronfel appeals from the trial court's judgment awarding him damages for personal injuries he sustained after the bicycle he was riding collided with Patrick Murray's dog. In ten issues Cronfel challenges the legal and factual sufficiency of the evidence supporting the jury's liability and damages findings. In one issue, Cronfel also challenges the trial court's order that Cronfel pay Murray's attorneys $5,000 as sanctions for his conduct during the course of discovery. We will affirm.

## BACKGROUND

In July 2009, Cronfel was riding his bicycle on a residential street in his neighborhood. Murray was walking his dog, Magnum, on the same street. Murray testified that after Magnum relieved himself on a lawn several feet from the street, he placed Magnum's leash under his foot to secure him while he picked up the dog's waste. Magnum broke free and ran into the street, colliding

with the front tire of Cronfel's bicycle. Cronfel was thrown from the bicycle and broke his fall with his right arm, which was injured as a result. Cronfel sued Murray for damages arising from his personal injury caused by the fall. After a three-day trial, a jury found that both Murray's and Cronfel's negligence proximately caused the injury and allocated 55% of the responsibility to Murray and 45% of the responsibility to Cronfel. The jury further found that the following amounts would reasonably compensate Cronfel for his injuries resulting from the fall: (1) $12,345 for past and future medical expenses; (2) $3,500 for past and future physical pain and mental anguish; and (3) $2,500 for past and future physical impairment. The jury awarded zero damages for past and future disfigurement. The trial court rendered judgment on the verdict, awarding Cronfel $10,089.75, an amount equaling the total of 55% of each damage element the jury had awarded. *See* Tex. Civ. Prac. Rem. Code § 33.012(a).

In this appeal, Cronfel argues that (1) the evidence is legally and factually insufficient to support the jury's findings that his negligence was a proximate cause of the injury and (2) the evidence is legally and factually insufficient to support the amount the jury awarded him for each element of damages included in the charge. Cronfel also argues that the trial court abused its discretion by ordering Cronfel to pay $5,000 as sanctions.

**STANDARD OF REVIEW**

To determine whether legally sufficient evidence supports a challenged finding, we must credit evidence favorable to the finding if a reasonable factfinder could, disregard contrary evidence unless a reasonable factfinder could not, and reverse the factfinder's determination only if the evidence presented at trial would not enable a reasonable and fair-minded factfinder to reach

2

the judgment under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will sustain a legal sufficiency challenge if the record reveals: (1) the complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810. When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

In reviewing a factual-sufficiency challenge, we examine the entire record and consider and weigh all the evidence, both in support of and contrary to the challenged finding. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on an issue on which it had the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Urista v. Bed, Bath & Beyond, Inc.*, 245 S.W.3d 591, 601 (Tex. App.—Houston [1st Dist.] 2007, no pet.). When a party attacks the factual sufficiency of an adverse finding on which it does not have the burden of proof, we set aside the finding only if the evidence is so weak as to make the finding clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *City of Keller*, 168 S.W.3d at 819. When there is conflicting evidence, it is the

3

province of the jury to resolve such conflicts. *Id.* at 820. If conflicting inferences can be drawn from the evidence, we assume jurors made all inferences in favor of their verdict if reasonable minds could, and disregard all other inferences. *Id.* at 821. If the evidence allows only one inference, we may not disregard it. *See id.* If the evidence falls within a zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *See id.* at 822.

Finally, when an issue of material fact is submitted to a jury, the sufficiency of the evidence is measured by the questions and instructions in the charge. *See Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 601 (Tex. 2010) (noting that evidentiary sufficiency must be measured against jury charge); *Romero v. KPH Consol., Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (observing that court bound to review evidence in light of instruction submitted to jury without objection).

### Contributory Negligence Finding

In Question No. 1, the jury was asked, as to both Cronfel and Murray, whether that person's negligence, if any, proximately caused "the injury in question?"[1] Predicated on a finding that both Cronfel's and Murray's negligence had proximately caused the "injury in question," Question No. 2 asked the jury to allocate the percentage of the total (100%) negligence causing the "injury" that it found to be attributable to Cronfel and to Murray respectively. In his first two

---

[1] The charge does not define "the injury in question." At trial Cronfel elicited testimony from his treating physician about two separate injuries he allegedly suffered as a result of the fall, each requiring different treatment: (1) a fractured radius that led to "ulnar impaction syndrome" requiring surgery to shorten the ulna, and (2) a scapholunate ligament tear that led to arthritis in the bones of the wrist requiring surgery to perform a four point bone fusion.

issues, Cronfel contends that there is legally and factually insufficient evidence to support the jury's finding that he was negligent and that Murray was not 100% responsible for the injury.[2]

At trial Cronfel testified about the circumstances leading to his fall. Cronfel testified that he was cycling through a residential neighborhood where he was aware people routinely walked, biked, and otherwise enjoyed the outdoors. According to Cronfel, he was "ramping up" his speed to get in a good workout. Cronfel stated that he cycled toward the middle of the street several feet away from parked cars so he would not be hit if someone opened a car door. Cronfel testified that he was focused on his workout and did not see Murray or his dog walking on the sidewalk. Photographic evidence of the street indicated that had Cronfel been looking up or around, a person walking on the sidewalk or in the adjacent yards could have been visible. Cronfel testified that he never saw Magnum running toward the street and was not aware of his presence until the dog collided with Cronfel's front tire. For his part, Murray testified that he did not see Cronfel before the collision and could not describe his actions. No other witnesses testified about the collision.

Considering the evidence and the inferences that could reasonably be drawn therefrom in the light most favorable to the verdict, we conclude that there is more than a scintilla of evidence supporting the jury's finding that Cronfel was negligent and that his negligence was a proximate cause of the accident. From Cronfel's testimony that he was "ramping up" his speed, the jury could infer that he was riding his bicycle at a high rate of speed. He was doing so on a residential street

---

[2] Murray had the burden of proof with regard to Cronfel's contributory negligence and, consequently, Cronfel challenges the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof. *See McDonald v. Dankworth*, 212 S.W.3d 336, 340 (Tex. App.—Austin 2006, no pet.) (when contributory negligence is submitted burden of proof is on defendant).

where people were frequently out walking. Cronfel's testimony that he was focused on riding his bicycle and did not see Murray or Magnum provides a reasonable basis for a jury to conclude that Cronfel was not being as observant of his surroundings as would a person of ordinary care under the circumstances. The evidence at trial and the reasonable inferences that can be drawn therefrom constitute more than a scintilla of evidence supporting the jury's finding that Cronfel failed to do that which a person of ordinary prudence would have done under the same or similar circumstances. Thus, there was more than a scintilla of evidence that Cronfel's actions constituted negligence. Although Cronfel testified that he did not see the dog before it collided with his tire and could have done nothing to avoid the collision, there was evidence that Cronfel was far enough away from parked cars that he could have seen Magnum emerge from behind them into the street. The jury could reasonably have found that Cronfel's failure to see the dog resulted from his failure to be observant of his surroundings or, alternatively, could have disbelieved Cronfel's testimony that he did not see the dog. The jury could also have reasonably attributed Cronfel's inability to avoid hitting the dog to the speed at which Cronfel was traveling. This evidence is sufficient to support the jury's finding that Cronfel's own negligence contributed to the collision with Magnum that caused his injuries.

Moreover, because the jury was asked to determine whose negligence caused the "injury in question," as opposed to "the accident" or "the collision," it was not limited to considering only Cronfel's pre-collision conduct in assessing whether his negligence contributed to the injuries for which he sought compensation. There was evidence at trial that the "injury in question" included a scapholunate ligament tear and arthritis in Cronfel's wrist that his treating physician testified

6

resulted from that tear and that would require a four point bone fusion. The jury could have considered evidence that Cronfel failed to act as a person of ordinary prudence would have after suffering a scapholunate ligament tear. There was evidence presented at trial that after his scapholunate ligament was injured in the fall, Cronfel continued to engage in significant physical activities including lifting weights, doing push ups and pull ups, carrying hunting gear, and cycling. There was evidence that Cronfel's physical therapist was concerned about the extent and nature of Cronfel's physical activities and their effect on his wrist. There was also evidence that there were occasions when Cronfel did not follow his physical therapist's recommendation to stretch and ice his wrist. Thus, there was more than a scintilla of evidence supporting the jury's finding that Cronfel's own failure to use ordinary care to allow the scapholunate ligament tear to heal before resuming physical exercise exacerbated that injury and contributed to the need for four point bone fusion surgery.

We conclude that the evidence was legally sufficient to support the jury's finding that Cronfel's negligence was a proximate cause of either the broken radius, the arthritis resulting from the scapholunate ligament tear, or both. We further conclude that the evidence that Cronfel's failure to use ordinary care proximately caused his injuries is not so weak as to make such a finding clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. Cronfel's first two issues are overruled.

### *Damages*

In issues three through ten, Cronfel challenges the legal and factual sufficiency of the evidence supporting the amount of damages the jury awarded. The trial court submitted damages in Question 3 of the charge inquiring "what sum of money, if paid now in cash, would fairly and

7

reasonably compensate [Cronfel] for his injuries, if any, that resulted from the injury in question?" The jury was asked to answer separately regarding the following elements of damages: (1) past physical pain and mental anguish ($2,500); (2) future physical pain and mental anguish ($1,000); (3) past physical impairment ($500); (4) future physical impairment ($2,000); (5) past medical expenses ($9,345); (6) future medical expenses ($3,000); (7) past disfigurement ($0), and (8) future disfigurement ($0). The charge did not define any of these elements of damages, but did instruct the jury to consider each element separately and not to award money on an element if a sum of money for the same loss was awarded under some other element.[3]

Dr. Ira Lown, a hand surgeon and Cronfel's treating physician at the time of trial, provided testimony about Cronfel's injuries and the treatment provided by Dr. Lown and by Cronfel's previous treating physicians. Dr. Lown's testimony about Cronfel's previous medical treatment derived from his review of Cronfel's medical records. The jury heard testimony that Cronfel went to his general practitioner, Paul Keinarth, the day after the accident. Dr. Keinarth ordered x-rays of Cronfel's right elbow, hand, shoulder, and wrist. The x-rays revealed a fracture of the radius near the elbow joint. According to Dr. Lown, this was a non-surgical fracture that typically would require immobilization in a sling for two weeks, followed by range of motion exercises. Dr. Lown testified that the x-ray also showed a separation between the scaphoid and lunate bones in Cronfel's wrist that indicated to him that Cronfel had a scapholunate ligament tear, a condition that over time can lead to degenerative joint disease and arthritis in the wrist joint.[4]

---

[3] The charge clarified: "That is, do not compensate twice for the same loss, if any."

[4] The condition of the ligament itself is not discernible in an x-ray.

8

Dr. Lown testified that after Cronfel's radial fracture healed, the radius was shorter than the ulna, resulting in "ulnar impaction syndrome," a condition causing pain in the wrist that can only be treated surgically. Dr. Lown testified that an MR arthogram taken one year after the accident showed that Cronfel had a large scapholunate ligament tear with accompanying arthritic changes. Dr. Lown opined that this condition indicated that Cronfel had suffered a large scapholunate ligament tear in July 2009.

Cronfel first went to see Dr. Lown in August 2011 after his treating physician passed away. Cronfel presented to Dr. Lown with a scapholunate ligament tear, that had, over time, caused an arthritic condition in Cronfel's wrist that, in Dr. Lown's opinion, would require a four point bone fusion surgery. Cronfel also complained of pain from the ulnar impaction syndrome. Dr. Lown performed surgery to shorten Cronfel's ulna, correcting the ulnar impaction syndrome, in September 2014.

Murray also elicited testimony from Dr. Lown about Cronfel's injuries on cross-examination. Dr. Lown agreed that he had not seen or treated Cronfel until more than two years after the 2009 bicycle accident. Dr. Lown testified that Cronfel had had a very similar bicycle accident in 2005, again breaking his fall with his right arm, and that his treating physician had at that time noted that Cronfel appeared to have suffered a scapholunate ligament tear from that previous accident as well. Dr. Lown opined that the tear from the previous accident was minor. Dr. Lown agreed that an MRI done on Cronfel's wrist in 2005 showed that there was already a tear in Cronfel's scapholunate ligament. Dr. Lown also testified that within three weeks of the July 2009 accident, Cronfel was engaging in exercise such as lifting weights and doing push ups and pull ups. Dr. Lown

9

testified that Cronfel could have had surgery, but did not, to repair the large scapholunate ligament tear in 2009. Dr. Lown agreed that shortly after the 2009 accident, Cronfel's medical records indicated that he had full range of motion of his wrist and no tenderness, and that an x-ray taken a year after the accident revealed no arthritic changes to the bones in his wrist. Cronfel's medical records also revealed that he continued his exercise regimen and, despite being advised to by his physical therapist, was not stretching before or icing his wrist after exercising. The medical records indicated that at some point in 2011, Cronfel "torqued" his wrist while lifting weights.

With this testimony in mind, we turn to analysis of the jury's damages awards to Cronfel.

### Past and Future Physical Pain and Mental Anguish

In his challenges to the jury's awards for past and future physical pain and mental anguish, Cronfel asserts that the amount of damages awarded for each category is either supported by no evidence or is against the great weight and preponderance of the evidence. Damages fall into two broad categories when someone suffers personal injuries, "economic and non-economic damages." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003). Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement. *Id.* "The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.). When the existence of some pain and mental anguish has been established, "there is no objective way to measure the adequacy of the amount awarded as compensation, which is generally left to the discretion of the fact

10

finder." *Pentes Design, Inc. v. Perez*, 840 S.W.2d 75, 80 (Tex. App.—Corpus Christi 1992, writ denied). The jury is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering. *Texarkana Mem'l Hosp. v. Murdock*, 946 S.W.3d 836, 841 (Tex. 1997).

On appeal, Cronfel argues that there was no evidence that he did not suffer physical pain and mental anguish and that, given the extent of his injuries, the jury's award of $2,500 is too low. Given the discretion the jury is afforded in determining the appropriate amount of money to compensate Cronfel for his past pain and mental anguish, a subjective, unliquidated, nonpecuniary loss, we cannot say that the award has no evidentiary support or is against the great weight and preponderance of the evidence. We likewise will not disturb the jury's finding that $1,000 will compensate Cronfel for future physical pain and mental anguish that Cronfel will, in reasonable probability, sustain in the future as a result of the July 2009 accident. We overrule Cronfel's challenges to the jury's damages award for past and future physical pain and mental anguish.[5]

**Past and Future Physical Impairment**

The jury awarded Cronfel $500 for past physical impairment and $2,000 for future physical impairment. "Physical impairment, sometimes called loss of enjoyment of life,

---

[5] We further conclude that the trial court did not abuse its discretion by permitting Murray to elicit testimony from Cronfel about previous surgeries Cronfel may have elected to undergo in the past to rebut Cronfel's testimony that the prospect of surgery related to injuries sustained in the 2009 accident caused him mental anguish. Cronfel has also failed to demonstrate that any error in admitting this evidence was harmful. *See* Tex. R. App. P. 44.1(a) (no judgment may be reversed on appeal on ground that trial court made error of law unless court concludes that error complained of probably caused rendition of improper judgment or probably prevented appellant from properly presenting case to court of appeals); *Farmer's Tex. Cty. Mut. Ins. Co. v. Pagan*, 453 S.W.3d 454, 461 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

11

encompasses the loss of the injured party's former lifestyle." *General Motors Corp. v. Burry*, 203 S.W.3d 514, 554 (Tex. App.—Fort Worth 2006, pet. denied). "[L]oss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment. Indeed, if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life." *Golden Eagle Archery, Inc.*, 116 S.W.3d at 772. A plaintiff must generally show that his physical impairment damages are substantial and extend beyond any pain, suffering, mental anguish, lost wages, or diminished earning capacity. *Burry*, 203 S.W.3d at 555.

In this case, "physical impairment" was undefined, and the relevant instruction was that the jury was not to award any sum of money on an element if it had otherwise, under some other element, awarded a sum of money for the same loss. On appeal, Cronfel points to his testimony that he has a limited range of motion in his wrist and has had to adjust his exercise programs on account of his physical impairment. There was also, however, testimony that after the July 2009 accident Cronfel continued to exercise, go on hunting trips, and ride his bicycle. We cannot conclude on this record that the award of $500 for past loss of enjoyment of life and $1,000 for similar future loss of enjoyment is either unsupported by any evidence or against the great weight and preponderance of the evidence. We overrule Cronfel's challenges to these damages awards.

**Past Medical Expenses**

Cronfel argues that because he presented medical billing records showing that he has paid medical providers $11,067.59, the jury's award of only $9,345 for past medical expenses is supported by no evidence or is against the great weight and preponderance of the evidence. We will

not disregard a jury's damage award merely because the jury's reasoning in reaching its figure is unclear. *First State Bank v. Keilman*, 851 S.W.2d 914, 930 (Tex. App.—Austin 1993, writ denied). A jury has discretion to award damages within the range permitted by the evidence as long as a rational basis exists for the jury's damage calculation. *Id.* The jury heard evidence that Cronfel had suffered an injury to his scapholunate ligament in 2005, four years before the July 2009 accident, and that he did not have surgery to repair the ligament at that time, nor did he have surgery to repair the ligament after the 2009 accident. The jury also heard evidence that, although Cronfel had full range of motion and no pain in his wrist after the 2009 accident, he began to experience pain in the following years, during which time period he engaged in an exercise routine that included weight lifting, doing push ups and pull ups, and cycling. There was also evidence that Cronfel was involved in another bicycle accident in August 2012. Cronfel submitted evidence that $4,128 of the medical expenses he sought to recover were paid to his treating physician, Ira Lown, for the time period from August 11, 2011 through the date of trial. The jury could reasonably have concluded that not all of the treatment Dr. Lown provided was the result of the 2009 bicycle accident. There was evidence to support a conclusion that at least some of Dr. Lown's treatment was attributable to factors other than the 2009 accident, including the 2005 accident and Cronfel's continued vigorous exercise routines during which, on at least one occasion, he disregarded his physical therapist's instructions to stretch and ice his wrist. A rational juror could infer that at least some of Dr. Lown's treatment was necessitated by Cronfel's own actions or injuries unrelated to the 2009 accident. There was a rational basis for the jury's decision not to award the entire $11,067.59, and the amount awarded is not against the great weight and preponderance of the evidence.

13

**Future Medical Expenses**

The jury awarded $3,000 as fair and reasonable compensation for medical care expenses Cronfel would, in reasonable probability, incur in the future as a result of the injury to his arm sustained in the July 2009 accident. Cronfel asserts that this amount is unsupported by the evidence or against the great weight and preponderance of the evidence and that he should have been awarded $14,690, the amount of future medical expenses Dr. Lown estimated for a four point bone fusion. An award of future medical expenses lies largely within the jury's discretion. *Columbia Med. Ctr. v. Bush*, 122 S.W.3d 835, 863 (Tex. App.—Fort Worth 2003, pet. denied). Because issues such as medical advances and the future costs of products and services are, by their nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages. *Sanmina-SCI Corp. v. Ogburn*, 153 S.W.3d 639, 642-43 (Tex. App.—Dallas 2004, pet. denied). Moreover, as with past medical expenses, the jury could reasonably have found that the need for the future four point bone fusion surgery was not entirely the result of the July 2009 accident but was also caused in part by the 2005 scapholunate ligament injury and by Cronfel's failure to have that tear or the 2009 scapholunate ligament tear surgically repaired at that time. Moreover, the jury could reasonably have concluded that Cronfel's continued vigorous exercise program in the face of this injury contributed to the chronic condition requiring surgical intervention. The jury awarded Cronfel approximately one quarter of the amount of future medical expenses Dr. Lown opined he would incur. There was a rational basis for the jury to award some, but not all, of the estimated future medical expenses, and we will not disturb the award on appeal.

**Past and Future Disfigurement**

The jury awarded zero dollars to compensate Cronfel for any past and future disfigurement resulting from the injuries he sustained in the collision. Cronfel challenges the legal and factual sufficiency of the evidence supporting the zero damages award. "Disfigurement has been defined as 'that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Sunbridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 252 (Tex. App.—Texarkana 2005, no pet.) (citing *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960)). The disfigurement for which Cronfel seeks to recover compensatory damages is the misshapen, imperfect, or deformed state of his ulna,[6] and the scar that resulted from his ulna surgery. Cronfel's testimony regarding the basis for the non-economic damages for which he sought compensation was that he felt pain as a result of the injury, was scared something was really wrong, had trouble sleeping, felt nauseous and worried when he contemplated the surgeries he would undergo, experienced disruption to his daily activities, continued to feel pain after the surgery, and worried about future surgeries. With respect to the scar from the ulna surgery, Cronfel testified that it "is a daily reminder of what [he had] been through."

Disfigurement, physical impairment, and physical pain and mental anguish are overlapping categories of damages. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 770. The jury was instructed not to award a sum of money for the same loss under the different elements of damages

---

[6] In his brief Cronfel states that the accident caused a shortening of his ulna relative to his radius, but the evidence at trial was that the healed radius was shorter than the ulna. This mismatch required surgical shortening of the ulna to alleviate wrist pain caused by the longer ulna. In any event, after the accident both the ulna and the radius were shorter than they had been before the accident.

15

listed. All of the negative impacts from the injury that Cronfel testified about are covered by the physical impairment, physical pain, and mental anguish elements of damages for which the jury awarded Cronfel damages. There is no evidence in the record that either the injury to his arm bones or the scar from the surgery caused Cronfel to suffer damages unique to the disfigurement element. For example, Cronfel did not testify that he was embarrassed by the scar or the fact that his arm bones or, in the future his wrist bones, might be asymmetrical. There was simply no evidence of any damages for the cited disfigurement that are not subsumed within the other elements for which the jury did award damages. Excepting medical expenses, the only compensable damages to which Cronfel was entitled on this record as a result of any claimed disfigurement are pain and mental anguish. The jury compensated Cronfel for those damages in its answer to Question No. 3(1) and (2). Therefore, we cannot say that the jury's award of zero dollars for past and future disfigurement is unsupported by legally sufficient evidence or that it is against the great weight or preponderance of the evidence.

Having concluded that the amount of damages awarded by the jury for each of the submitted elements of damages were supported by legally and factually sufficient evidence, we overrule issues three through ten.

### Sanctions Order

In his eleventh issue, Cronfel argues that the trial court abused its discretion by ordering him to pay Murray's attorneys $5,000 as sanctions for what he describes as conduct related to discovery of his medical records. Cronfel asserts that (1) he complied with what he believed the trial court order should have been, (2) the sanction was based on his failure to authorize disclosure

16

of privileged mental health records that Murray had not even requested, and (3) the amount ordered as a sanction was excessive and the basis for that award was not explained with sufficient specificity to permit appellate review.

"By rule, statute, and their own inherent power, trial courts have broad authority to sanction litigants for specific misconduct." *In re Does 1-10*, 242 S.W.3d 805, 817 (Tex. App.—Texarkana 2007, no pet.). To support entry of a sanctions order under the court's inherent powers, the trial judge must find that the party caused significant interference with the legitimate exercise of the court's traditional core functions. *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979). We review a court's sanction as an exercise of its inherent power for abuse of discretion. *See Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable. *See Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997).

In his motion for sanctions, Murray asserted that in his initial response to discovery requests in August 2012, Cronfel identified five treating physicians and stated that he would supplement his discovery responses with the medical records from these physicians. Cronfel failed to produce any medical records and, in August 2013, Murray filed a motion to compel. Cronfel agreed to produce the records before a hearing on that motion. Murray's expert reviewed the records produced and determined, based on his familiarity with one of the treating physician's practice, that there were additional medical records that had not been produced. Murray then requested that Cronfel provide an authorization releasing medical records, which Cronfel refused to do. Murray then filed a second motion to compel.

17

After a hearing on March 5, 2014, the trial court granted Murray's motion and ordered Cronfel to provide a fully executed authorization to release his medical records by March 6. On March 7, Cronfel provided an authorization, but he included handwritten restrictions to the medical records he authorized to be released. Cronfel also filed an Emergency Motion for Protection from Discovery and set it for a hearing before Judge Stephen Yelenosky. After reviewing the motion, Judge Yelenosky sent the parties a letter stating:

> Plaintiff has known since Judge Triana signed her order that he was to provide the releases without the restrictions now sought. Plaintiff is charged with knowing that his medical records would contain at least some irrelevant material. So there is no emergency that has just arisen. Since the relief sought would be contrary to Judge Triana's Order Granting Defendant's Motion to Compel, she is the judge you should contact if you wish to request a setting with her on the Central Docket or otherwise at her direction.

Because Murray was not able to obtain the requested records by the March 24, 2014 trial date, the trial was continued. Murray asserted that he was ultimately able to get the records he requested pursuant to the authorization Cronfel did provide, even though the authorization contained restrictions that were contrary to the trial court's order.

Murray also asserted that when he took Dr. Lown's deposition prior to the March 24, 2014 trial date pursuant to a subpoena duces tecum, Dr. Lown did not bring to his deposition a complete chart for Cronfel. Dr. Lown and Cronfel's counsel agreed to provide Murray with the chart. When the chart was not provided, Murray again filed a motion to compel. The trial court ordered Cronfel to provide an authorization to release his complete medical chart from Dr. Lown by September 19, 2014. The court sent the signed order along with the authorization it directed

18

Cronfel to sign, to Cronfel and Murray. Cronfel signed the authorization but again amended it with handwritten restrictions that were contrary to the trial court's order. Murray then filed a motion for sanctions on October 7. Murray asserted in a supplemental motion for sanctions that on the day he filed and served Cronfel with his motion for sanctions he received an authorization dated September 18, 2014 that appeared to authorize a complete release of Cronfel's chart. Cronfel did not file a response to the motion for sanctions and argued at the hearing that he did not do so because the issue was "moot" as Murray had by then received all the medical records he requested.

After the hearing, the trial court took the motion for sanctions under advisement. Thereafter, the court signed an order that recites:

> On October 28, 2014, Defendant's Motion for Sanctions was presented to the Court for consideration in the above-referenced cause. After considering the motion and the evidence offered in the hearing, the Court will find as follows:
>
> IT IS ORDERED that the portion of the Defendant's motion seeking death penalty sanctions is denied at this time, and the Court will instead award lesser monetary sanctions, in part to cover the attorney's fees that Defendant incurred in response to this motion and all prior underlying hearings on prior motions to compel, and in part as sanctions for objectionable conduct, including but not limited to Plaintiff's altering the authorization form attached to the Order of the Court, signed and filed on September 18, 2014;
>
> IT IS THEREFORE ORDERED that Plaintiff GUILLERMO OCHOA-CRONFEL pay the sum of $5,000 (Five Thousand Dollars) in attorney's fees and sanctions to Walters, Balido, and Crain, L.L.P. by the date of November 10, 2014, and that all discovery that Plaintiff seeks in the above-referenced cause shall cease, except for mandatory supplementation under the Rules.

As an initial matter, although Cronfel contends that the sanctions order was an abuse of discretion because it was based on justified conduct—the desire not to produce privileged medical records

19

not relevant to the personal injuries the basis of this lawsuit—the order itself reveals that it was based on Cronfel's unilateral alterations of the medical authorizations the trial court ordered him to sign as well as for other "objectionable conduct."

A trial court has inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *IFC Credit Corp. v. Specialty Optical Sys., Inc.*, 252 S.W.3d 761, 772 (Tex. App.—Dallas 2008, pet. denied) (citing *Eichelberger*, 582 S.W.2d at 398). The trial court expressly found that Cronfel failed to comply with court orders by altering the authorization form he was ordered to sign. Moreover, the motion for sanctions outlines how Cronfel's "objectionable conduct" interfered with at least one trial setting. A trial court's core functions include "the management of its docket and the issuance and enforcement of its orders." *See In re K.A.R.*, 171 S.W.3d 705, 715 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Thus, the court had the inherent power to sanction Cronfel for his conduct. *See Eichelberger*, 582 S.W.2d at 398. The sanctions awarded must be reasonable and also have a direct relationship to the offensive conduct. *See TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 916 (Tex. 1991). Here, the sanction of $5,000 was in part to cover attorneys' fees made necessary by Cronfel's repeated refusal to comply with discovery requests and court orders and in part to deter Cronfel from continuing to engage in "objectionable conduct." We cannot conclude on this record that the trial court abused its discretion by ordering Cronfel to pay Murray's attorneys $5,000. We overrule the eleventh issue.

## CONCLUSION

Having overruled each of Cronfel's eleven appellate issues, we affirm the trial court's judgment.

20

_____

                    Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   June 22, 2016